237 N.J. Super. 4 (1989)
566 A.2d 822
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DIANE DOWNEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 1989.
Decided November 20, 1989.
*6 Before Judges MICHELS, DEIGHAN and BROCHIN.
Jack Gerber, Designated Counsel, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney; Ruth K. Culhane, Designated Counsel, of counsel and on the brief).
John J. Scaliti argued the cause for respondent (Peter N. Perretti, Jr., Attorney General of New Jersey, attorney; Debra G. Lynch, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
In February, 1982, defendant Diane Downey and co-defendant Linda Prudden (Ms. Prudden) were indicted by the Middlesex County Grand Jury and charged with first degree murder in violation of N.J.S.A. 2C:11-3. In November, 1982, following a lengthy trial, defendant was found guilty of first degree murder of her husband Robert Downey (decedent) and sentenced to life imprisonment. In January, 1986, we reversed defendant's conviction and ordered a new trial. State v. Downey, *7 206 N.J. Super. 382 (App.Div. 1986).[1] In November, 1986, following a lengthy retrial, defendant was again found guilty of first degree murder. In December, 1986, defendant's motion for a new trial was denied, and she was sentenced to the Correctional Institution for Women for a term of life imprisonment and assessed a $25 penalty payable to the Violent Crimes Compensation Board. In March, 1987, we granted defendant leave to file a notice of appeal nunc pro tunc.
The factual context within which the issues on this appeal have been raised can be summarized as follows. In an effort to establish a motive for the murder of decedent on December 23, 1981, the State sought to introduce testimony to the effect that defendant and Ms. Prudden had been engaged in a lesbian relationship that caused severe marital discord between decedent and defendant. The trial court conducted a Rule 8 hearing to determine the admissibility of the State's evidence. During the course of the hearing, Jeffrey Downey, the decedent's brother, testified that during December, 1981, defendant and her children had been living at the Prudden residence in Bound Brook and that the deceased "wasn't very happy about it." Jeffrey Downey further testified that on December 21, 1981, two days before the murder, the deceased, through his mother, requested that he (Jeffrey Downey) stop by the Prudden residence to bring some of defendant's personal belongings to the Downey residence for the holidays. When Jeffrey Downey arrived at the Prudden residence later that day and informed defendant of his reason for being there, defendant stated that "she wasn't ready."
*8 Mrs. Pauline Downey, the decedent's mother, testified to one conversation she had with defendant and three conversations she had with the decedent. According to Pauline Downey, around Christmas 1980, defendant called her at work and asked her to stop by the Downey residence to discuss a problem that she was having with the decedent. When Mrs. Downey arrived, defendant told her that the decedent was being too possessive and that he always wanted to know her whereabouts. Defendant also stated that the decedent objected to her friendship with Ms. Prudden, but that she did not intend to give up that friendship. At that time, defendant denied that she was having a lesbian relationship with the co-defendant.
The day after this conversation, Pauline Downey spoke with the decedent about her conversation with defendant. According to Pauline Downey, decedent was in "rather an emotional state" and was "very tense." Decedent told his mother that he wanted to try to make his marriage work because he wanted his family together. He also expressed concern over his relationship with defendant's family because he had been "irritable, grouchy and short tempered" with them.
Pauline Downey also testified to a second conversation she had with the decedent in July, 1981. She stated that at that time the decedent was "extremely agitated, very very upset," and kept pacing back and forth. He told her that he and his wife were still experiencing marital discord and that defendant's relationship with Ms. Prudden continued to bother him. When Pauline Downey asked the decedent if he were imagining the lesbian relationship, he produced a love letter that had been written by defendant addressed to Ms. Prudden. Pauline Downey read the note and, with the decedent's permission, kept it. The note read:
Dear Lin, I fell asleep right after you did only to wake up around four o'clock because my lung cramped, but please wake me up when you get up so we can spend some time together. I know you must be sick of hearing this, but after you fell asleep you wouldn't even let me hold you. You said I was just like Bobby and Ray. Is anything wrong? I really didn't expect you to fall asleep. I love you, love Diane.
*9 Subsequently, Pauline Downey recounted a third conversation with the decedent that had occurred on December 19, 1981, four days before the murder. She stated that the decedent had arrived at her house late that night and "was totally different than he had been for so long." She stated that the decedent appeared to be extremely happy. According to Pauline Downey, the decedent stated: "Diane and the kids are coming home for Christmas, we're all going to be together for Christmas and I'm just so happy."
The trial court held the proffered testimony admissible, reasoning, in part, that the conversations related by decedent's mother and brother were part of
a mosaic, a pattern .... [which] clearly goes to the state of mind of the defendant Diane Downey on the theory of the motive for doing what is alleged to have occurred on December 23, 1981. To the extent there's some tangential intertwining of the mind of the decedent himself, I find that is very tangential, if at all....
The State also introduced evidence that defendant had expected to receive a substantial sum of money upon the death of the decedent. Specifically, the State presented evidence that defendant was aware that she was the primary beneficiary on three life insurance policies, two for $10,000 and one for $60,000. One of the $10,000 policies had a double indemnity clause and, therefore, if defendant recovered the full amount on all three policies, she would have received $90,000.
To rebut the State's attempt to establish financial gain as a motive for the murder, defendant presented the testimony of Richard Thiele, Esq., an attorney who had represented defendant in an action to recover damages for injuries sustained by defendant in an automobile accident. The trial court allowed Mr. Thiele to testify after a Rule 8 hearing. Mr. Thiele testified that on July 20, 1981, approximately five months prior to the homicide, he met with defendant at the Prudden residence. During that meeting there had been a discussion concerning the possibility of a settlement, and defendant had been informed by Mr. Thiele that, in his view, her case could be *10 settled for between $35,000 and $75,000. On cross-examination, the prosecutor sought to determine the amount for which the lawsuit had been settled. Defendant objected and argued that the settlement had occurred approximately one year after the homicide and that defendant's state of mind at that time was not an issue. The prosecutor argued that defense counsel had opened the door first by offering the testimony of the witness and then by proceeding to ask numerous questions concerning the attorney's opinion regarding the amount of a possible settlement. The trial court overruled the objection and Mr. Thiele testified that defendant's case had been settled for $4,000 which, after costs, meant an actual recovery for defendant of $1,899.08. Thereafter, on redirect examination, Mr. Thiele testified that he had never told defendant, prior to the homicide, that her case was worth only $4,000.

I.
Defendant seeks a reversal of her conviction and a remand for a new trial contending first that it was error to admit evidence regarding the decedent's state of mind. She claims that the trial court erred in admitting testimony from the decedent's brother and mother under the state of mind exception of Evid.R. 63(12). Specifically, she argues that the decedent's state of mind was not an issue in this case and, therefore, the hearsay evidence was probative of no material fact in issue and, as such, should have been excluded, as irrelevant. Defendant also contends that this court had already held that "the victim's state-of-mind was not a relevant issue to be decided by the jury," in State v. Downey, supra, 206 N.J. Super. at 391 and, therefore, under the "law of case" doctrine, she had the right to expect the holding of the Appellate Division to be applied to all evidence asserted under the state of mind exception when it dealt with the state of mind of the victim.
The State, on the other hand, argues that the challenged statements demonstrate the state of mind of defendant, and not *11 the decedent, in an effort to establish a motive for the homicide. The State further asserts that the testimony was admissible, even though it included statements of the decedent as well as the defendant, because "[s]uch statements ... are indirectly relevant as part of the `mosaic' of the event, providing background information on the relationship between the deceased and the defendant." Finally, the State argues that even if the admission of the testimony was improper, any error was harmless in that the "statements were merely cumulative, simply demonstrating that defendant and the victim were having marital difficulties."
In State v. Carter, 91 N.J. 86 (1982), our Supreme Court commented on the wide latitude allowed with respect to the admissibility of motive evidence in criminal prosecutions. The Court explained:
It is well established that the prosecution may introduce evidence of motive. See 1 Wigmore, Evidence § 118, at 558-59 (3d ed. 1940); 1 Wharton, Criminal Evidence § 170, at 314-15 (13th ed. 1972). Its purpose is to aid the jury, particularly in a case resting upon circumstantial evidence, in determining who the person was who committed the crime.
A wide range is permitted with respect to the nature of the evidence that may be introduced. Wharton expressed this thought:
In the introduction of evidence to show motive, a wide range is permitted. Thus, any evidence which logically tends to show a motive, or which fairly tends to explain the conduct of the accused, should be permitted. In order for evidence of motive to be admissible, it is not necessary that each part of it be sufficient to prove the motive. The facts supplying a motive may be adduced in connection with other evidence in the case. [1 Wharton, Criminal Evidence, supra, § 170 at 316-18].
We have adhered to this doctrine. In State v. Rogers, 19 N.J. 218 (1955), the prosecution's introduction of evidence to show that the defendant had been indebted to the murder victim and was motivated at least in part by a desire to wipe out these loan obligations was permitted. Justice Wachenfeld, writing for a unanimous court, approved. He wrote:
In criminal prosecutions, whenever the motive or the intent of the accused is important and material, a somewhat wider range of evidence is permitted in showing such motive or intent than is allowed in the support of other issues.... Otherwise there would often be no means to reach and disclose the secret design or purpose of the act charged in which the very gist of the offense may consist. Such intent or motive may be proved either by direct or circumstantial evidence. All evidentiary circumstances which are relevant to or tend to shed light on the motive or intent of the defendant or which tend *12 fairly to explain his actions are admissible in evidence against him although they may have occurred previous to the commission of the offense. [Id. at 228].
Our courts have continued to follow Rogers. See State v. Baldwin, 47 N.J. 379, 391 (1966) (evidence that defendant killed victim to silence him as a prospective witness held proper); State v. Royster, 57 N.J. 472, 484-85 (1971) (evidence that defendant threatened victim several weeks before murder permitted). This is the majority rule throughout the country. See 22A C.J.S. Criminal Law § 614 (1961 & Supp. 1982); 29 Am.Jur.2d, Evidence § 363 (1967). [91 N.J. at 102-103].
Determinations regarding the remoteness of such evidence are to be made by the trial court as a matter of discretion and these determinations are not reviewable unless it appears that there has been a palpable abuse of that discretion. See State v. Rogers, 19 N.J. 218, 229 (1955).
Evid. R. 63(12), in pertinent part, provides:
A statement is admissible if it was made in good faith and it (a) described the declarant's then existing state of mind, emotion or physical sensation, including statements of intent, plan, motive, design, mental feeling, pain and bodily health, but not including memory or belief, to prove the fact remembered or believed, when such a mental or physical condition is in issue or is relevant to prove or explain acts or conduct of the declarant. .. .
For evidence to be admissible under this exception to the rule against hearsay, it is necessary that: "a) the statement reflects a mental or physical condition of the declarant which constitutes a genuine issue in the case or b) the statement is otherwise relevant to prove or explain the declarant's conduct." State v. Downey, supra, 206 N.J. Super. at 390. See State v. Prudden, 212 N.J. Super. 608, 613 (App.Div. 1986).
Prior to the adoption of this rule, the New Jersey Supreme Court had recognized the admissibility of hearsay testimony as to a victim's state of mind in criminal prosecutions for murder. In State v. Thornton, 38 N.J. 380 (1962), cert. den. 374 U.S. 816, 83 S.Ct. 1710, 10 L.Ed.2d 1039 (1963), statements made by the decedent to a family member regarding her intention to visit defendant at his home were introduced by the State to negate defendant's alibi that decedent had confronted him with a gun at a doctor's office some distance away. In affirming the trial court's admission of this testimony, the Court stated:

*13 We are satisfied that the challenged evidence was admissible as an exception to the hearsay rule. When a person's engagement in a course of conduct or an act (here, the decedent's visit to defendant's apartment) is relevant to the resolution of a controversy over an occurrence which becomes the subject of subsequent litigation (here, the homicide), declarations of the person of his present intention or plan to do so, are competent, substantive, and original evidence of his probable engagement in the course of conduct or act. [38 N.J. at 389].
Similarly, in State v. Baldwin, 47 N.J. 379 (1966), cert. den. 385 U.S. 980, 87 S.Ct. 527, 17 L.Ed.2d 442 (1966), the Court held that hearsay statements made by the defendant in a murder prosecution after the murder but prior to the discovery of the body were admissible to establish the defendant's state of mind. In reaching this conclusion, however, the Court noted a distinction between such statements and statements made prior to a criminal event. With respect to the latter, the Court explained:
Declarations by the victim of the crime, or by the accused prior to the criminal event, are admitted notwithstanding their "hearsay" character. Generally, the basis for accepting such testimony is that the behavior of both the victim and the defendant are part of the mosaic of the criminal event, and hence, insofar as their declarations bear upon either the quality of their acts or a relevant state of mind, they must be accepted as part and parcel of the critical scene. [Id. at 394 (Emphasis added)].
Applying these principles here, we are satisfied that the trial court properly admitted the testimony of the decedent's brother and mother concerning conversations that they had with defendant and the decedent. The challenged conversations were offered to and intended to demonstrate the state of mind of defendant, not the decedent, and to establish a motive for the homicide. The challenged testimony tends to show that the decedent wanted his wife and children back and that he objected to the relationship that existed between defendant and her lesbian lover, Ms. Prudden. These conversations plainly showed the decedent's continuous objection to the relationship and the pressure placed upon defendant by him to terminate this relationship, defendant's unwillingness to do so and the decedent's eventual belief that defendant and his children were going to be home for the holidays. Furthermore, unlike Ms. Prudden's husband, who apparently did not object to the relationship *14 between the two women, defendant's husband did object and, consequently, there was a motive to murder him in an effort to stop him from interfering with that relationship. The intertwining of the decedent's state of mind in this testimony is, at best, tangential. The fact that the first conversation occurred approximately one year prior to the murder is inconsequential.
In any event, even assuming the trial court may have erred in admitting testimony of decedent's brother and mother regarding their conversations with the decedent, the error was not prejudicial and does not require reversal of defendant's conviction. The challenged statements were merely cumulative of the inferences to be drawn from other evidence and simply demonstrated that defendant and the decedent were having marital difficulties. Moreover, the circumstantial evidence of defendant's guilt was so strong that the testimony complained of was not necessary to establish guilt nor was there any real possibility that "the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971). See also State v. Melvin, 65 N.J. 1, 18-19 (1974); State v. Bankston, 63 N.J. 263, 273 (1973); State v. LaPorte, 62 N.J. 312, 318 (1973); State v. Freeman, 223 N.J. Super. 92, 110 (App.Div. 1988). Stated simply, the error was harmless.
Moreover, defendant's claim that the trial court was bound to exclude this evidence under the "law of the case" doctrine is clearly without merit. "The `law of the case' doctrine sometimes requires a decision of law made in a particular case to be respected by all other lower or equal courts during the pendency of that case." State v. Reldan, 100 N.J. 187, 203 (1985). See Sisler v. Gannett Co., 222 N.J. Super. 153, 159 (App.Div. 1987) certif. den. 110 N.J. 304 (1988); State v. Hale, 127 N.J. Super. 407, 410 (App.Div. 1974). The doctrine is premised upon the desirability of avoiding the relitigation of an issue that has already been litigated and decided. See Sisler v. Gannett Co., supra, 222 N.J. Super. at 159; State v. Hale, *15 supra, 127 N.J. Super. at 410. It "most commonly applies to the binding nature of appellate decisions upon a trial court if the matter is remanded for further proceedings, or upon a different appellate panel which may be asked to reconsider the same issue in a subsequent appeal." State v. Hale, supra, 127 N.J. Super. at 410. See Sisler v. Gannett Co., supra, 222 N.J. Super. at 160.
In our prior ruling in State v. Downey, supra, we noted that the decedent's state of mind was not an issue and, therefore, the decedent's handwritten letter was improperly admitted. Thus, the gist of our prior ruling regarded the improper admission of the decedent's handwritten letter. Here, as the State notes, "the prosecutor ... scrupulously avoided even the remotest reference" to the letter and, therefore, considerations of the "law of the case" doctrine were satisfied and do not bar the admission of the testimony challenged on this appeal.

II.
Defendant also contends that the trial court committed reversible error by allowing testimony regarding the settlement received by defendant as a result of her civil suit. Specifically, she argues that it is illogical to assert that an event, which occurred after the crime in question, is in any way probative of her state of mind prior to the crime, with regard to motive or any other aspect of her behavior. The State, on the other hand, argues that the jury was entitled to know the actual settlement amount since there was a $40,000 gap between the attorney's predicted settlement amount, between $35,000 and $75,000, and the actual settlement amount, $4,000. The State notes that the testimony regarding the low settlement amount "was also probative of the fact that defendant realistically was not expecting a large settlement since she knew that [the attorney] was entitled to one-third of the settlement, and that expenses incurred in connection with the litigation had to be deducted."
*16 Initially, it should be noted that, contrary to defendant's assertions, the State did not seek to introduce the testimony regarding the actual settlement merely as relevant or probative of defendant's state of mind. Actually, the testimony regarding the settlement amount was offered in response to the attorney's direct testimony regarding his "speculation in terms of what [the] case was worth." Clearly, defendant offered this testimony to rebut testimony from the State to the effect that she stood to gain financially from the decedent's death because she was the primary beneficiary on three life insurance policies in the decedent's name. The suggestion here is that defendant would not have murdered her husband for financial gain because she had already anticipated a substantial recovery on her civil lawsuit. Certainly, once defendant placed the attorney's opinion regarding the "worth of the case" in evidence, he put the attorney's credibility in issue. The State then had the right to cross-examine the attorney and, in so doing, to elicit the actual amount recovered. Cf. State v. Knight, 63 N.J. 187, 192-193 (1973); State v. Farr, 183 N.J. Super. 463, 469 (App. Div. 1982).
Accordingly, the judgment of conviction and order of commitment under review are affirmed.
NOTES
[1] Co-defendant Linda Prudden was tried separately and convicted of murder in violation of N.J.S.A. 2C:11-3, hindering the prosecution of another in violation of N.J.S.A. 2C:29-3 and false swearing in violation of N.J.S.A. 2C:28-2. Her convictions for murder and hindering prosecution were reversed, and a new trial was ordered by this court. State v. Prudden, 212 N.J. Super. 608 (App.Div. 1986).