875 A.2d 1005 (2005)
378 N.J. Super. 321
STATE of New Jersey, Plaintiff-Appellant,
v.
Robert SILVA, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued April 26, 2005.
Decided June 16, 2005.
Timothy Van Hise, Assistant Prosecutor, argued the cause for appellant (Wayne J. Forrest, Somerset County Prosecutor, attorney; Mr. Van Hise, of counsel and on the brief).
Norman M. Hobbie, argued the cause for respondent (Hobbie, Corrigan, Bertucio & Tashjy, attorneys, Eatontown; Mr. Hobbie, of counsel; Edward C. Bertucio, Jr., of counsel and on the brief).
Before Judges KESTIN, LEFELT and FUENTES.
The opinion of the court was delivered by
*1006 FUENTES, J.A.D.
Defendant, Robert Silva, was indicted by the Somerset County Grand Jury on second-degree burglary, N.J.S.A. 2C:18-2; third-degree aggravated assault, N.J.S.A. 2C:12-1b(7); and fourth-degree contempt, N.J.S.A. 2C:29-9b. On the day of trial, but before a jury was selected, defendant successfully moved to sever the contempt charge from the burglary and assault charges.
In granting defendant's motion, the court ordered the State to try the burglary and aggravated assault charges first, followed thereafter by the contempt charge. In this first trial, the court precluded the State from introducing any evidence of the existence of a domestic violence temporary restraining order (TRO) issued against defendant. The jury would become aware of the TRO in the second phase of the trial involving the charge of contempt.
The State agreed that a bifurcated proceeding, separating the burglary and aggravated assault charges from the contempt charge, was necessary to avoid the potential for prejudice. It objected, however, to the court's order precluding the introduction of the TRO into evidence in the burglary trial. The State argued that, without evidence of the existence of the restraining order, it would be unable to prove an indispensable element of the crime of burglary, to wit, that defendant was not legally licensed or privileged to enter his former residence. The court overruled the State's objection.
We granted the State's motion for leave to appeal and stayed the trial court proceeding pending our review of this matter. After considering the facts and applicable law, we agree with the State's position and reverse. For purposes of our discussion, we will accept the State's proffer as to what the evidence will show at trial.
Defendant, his longtime paramour Shirley,[1] and her two children lived together for several years in defendant's townhouse in the Borough of Raritan. On May 16, 2002, Shirley obtained a domestic violence TRO, alleging, as a predicate offense, that defendant harassed her at her place of employment. Among the relief granted in the TRO, Shirley was given exclusive possession of the Raritan townhouse, and defendant was restrained from having any contact with Shirley.
The State alleges that, two days after the issuance of the TRO, defendant entered the townhouse, argued with Shirley and punched her once in the face, causing injuries that required extensive medical treatment. Defendant, through counsel, has proffered an alibi defense, denying that he was ever at the townhouse anytime after the issuance of the TRO.

I
We begin our analysis by reaffirming the applicable standard of review. The trial court is vested with the discretion to sever any count in an indictment, if joinder would unfairly prejudice a defendant or the State. R. 3:15-2(b). We will thus reverse a trial court's grant of a motion to sever only if we are satisfied that it constitutes a mistaken exercise of that discretion. State v. Briley, 53 N.J. 498, 503, 251 A.2d 442 (1969).
In State v. Chenique-Puey, 145 N.J. 334, 678 A.2d 694 (1996), the Supreme Court considered whether it was proper to try terroristic threats, N.J.S.A. 2C:12-3b, jointly with fourth-degree contempt of a domestic violence restraining order, N.J.S.A. 2C:25-29b(1). The facts in Chenique-Puey are similar to the facts here. *1007 An unmarried couple with a history of cohabitation eventually separated due to "incessant arguing and fighting." Id. at 337, 678 A.2d 694. Sometime thereafter, the woman in that relationship obtained a domestic violence restraining order alleging terroristic threats as the predicate offense. Ibid.
Four years after the initial separation, Chenique-Puey returned to his previous residence, and threatened to shoot his former paramour and her boyfriend. He was charged with fourth-degree contempt for violating the domestic violence restraints, third-degree terroristic threats and fourth-degree unlawful possession of a knife.
At trial, Chenique-Puey unsuccessfully moved to sever the terroristic threats from the contempt charge, arguing that "joinder of this offense would prejudice him because evidence of the restraining order would convince the jury that he had in fact made the alleged terroristic threats against [his former paramour]." Id. at 339, 678 A.2d 694. The Supreme Court agreed with Chenique-Puey's position, because:
A jury could interpret the [domestic violence restraining] order as a judicial imprimatur on the victim's testimony. The order creates the inference that if a court found defendant guilty of domestic violence in a prior proceeding, that defendant is more likely guilty of the present terroristic-threat charges.
[Id. at 343, 678 A.2d 694.]
The Court directed trial courts to henceforth "try sequentially charges of contempt of a domestic-violence restraining order and of an underlying criminal offense when the charges arise from the same criminal episode." Ibid. The Court, however, affirmed the trial court's decision to admit evidence of the restraining order in the prosecution of the contempt charge, because "evidence of the domestic-violence restraining order was an essential element of the State's proofs." Id. at 342, 678 A.2d 694 (emphasis added).
Here, by severing the fourth-degree contempt count from the burglary and aggravated assault counts, the trial court correctly applied the holding in Chenique-Puey. There is no question that defendant would be unduly prejudiced by trying these charges together, because, like in Chenique-Puey, the jury here may improperly conclude that defendant may have assaulted Shirley, based, in part, on a previous judicial finding of domestic violence. In fact, as previously noted, the State is not contesting the validity of this ruling.[2]
The error in the trial court's ruling lies in its decision to preclude the State from offering any evidence of defendant's inability to enter lawfully his former residence, where the alleged burglary took place. In order to prove defendant guilty of third-degree burglary, the State must prove each of the following two elements beyond a reasonable doubt: (1) defendant entered a structure that he was not licensed or privileged to enter; (2) with the purpose of committing an offense therein. N.J.S.A. 2C:18-2a. Burglary becomes a second-degree crime if, in the course of committing the offense, defendant "purposely, knowingly or recklessly inflicts, attempts to inflict or threatens to inflict bodily injury on anyone." N.J.S.A. 2C:18-2b(1).
*1008 When the Family Part issued the TRO, it deprived defendant of his previous "license or privilege" to enter the townhouse that he exclusively owns and had shared with Shirley. Unless the State is permitted to present evidence of the existence of this legal disability, the State would be unable to prove an indispensable element of the crime of burglary. We recognize that defendant here is charged with second-degree burglary. By definition, in order to prove defendant committed this crime, the State must present evidence that defendant purposely, knowingly or recklessly inflicted, attempted to inflict or threatened to inflict bodily injury on Shirley. N.J.S.A. 2C:18-2b(1). Thus, the burglary and assault charges must be tried together.
The situation here is unlike the problem we confronted in State v. Lozada, 357 N.J.Super. 468, 815 A.2d 1002 (App.Div. 2003). In Lozada, defendant was charged with stalking, elevated to a third-degree offense because the alleged criminal conduct occurred while defendant was subject to a domestic violence restraining order, N.J.S.A. 2C:12-10c, and fourth-degree contempt. We reversed the trial court's denial of defendant's motion to sever, because "the jury's knowledge that there has been a restraining order is likely to prejudice defendant's right to a fair trial of the issue of whether he is guilty of conduct constituting stalking." Id. at 472, 815 A.2d 1002.
To solve this problem, we endorsed the Supreme Court's Model Criminal Charges Committee's proposal to try the issue of the degree of the stalking offense sequentially before the same jury. Writing for the panel, Judge Pressler explained that:
where the degree of the stalking offense is in question, the issue of whether there was stalking as defined by N.J.S.A. 2C:12-10b should be tried first without reference to any element, including a restraining order, that would elevate the fourth-degree crime to a third-degree crime. If the defendant is found guilty of stalking, then the trial court should "try the issue of degree before the same jury sequentially; first taking whatever additional proofs are necessary, then charging the jury" appropriately as to the element elevating the crime to third degree.
[Ibid.]
A Lozada-type remedy is irrelevant here, because a third-degree burglary charge cannot be elevated to a second-degree crime by virtue of a contempt charge.
We are satisfied that the correct approach here is to take a hybrid position, relative to the holding in Chenique-Puey. Because the State cannot meet its burden of proof as to burglary without the relief granted in the TRO, it must be permitted to present evidence to the jury that on May 18, 2002, Shirley had exclusive possession of the Raritan townhouse and defendant was not licensed or privileged to enter this structure.
There is no need, however, for the jury to know the legal basis for the issuance of the restraints. In fact, to avoid any possibility for mischievous speculation, the trial court should instruct the jury, using clear and emphatic language, that they are not to engage in any conjecture as to the legal or factual basis for the restraints. The origin of these legal limitations is simply irrelevant to the question of whether the State has proven defendant guilty of burglary beyond a reasonable doubt.
Evidence of the restraints, therefore, must be presented to the jury in a sanitized fashion, stripped of any connection to any incident of domestic violence. Redacting the original TRO to delete any reference to a domestic violence incident is not practical, however. The form of order *1009 used by the Family Part is not susceptible to this type of modification.
The alternative is for the judge presiding over the criminal trial to describe accurately for the jury, as a given fact, the existence and scope of the relevant restraints, while omitting any reference or link to a prior act of domestic violence. In so doing, the judge must also instruct the jury that the State remains obligated to prove, beyond a reasonable doubt, each and every element of the crime of burglary. The goal is to afford the State a fair opportunity to present vital evidence to the jury, without causing prejudice to defendant. Permitting the State to admit into evidence the TRO, without these sanitizing measures, needlessly exposes defendant to the prejudice the Supreme Court sought to avoid in Chenique-Puey.
The trial court's order precluding the State from introducing any evidence attesting that defendant was not licensed or privileged to enter this structure is reversed. The matter is remanded for trial consistent with this decision.
NOTES
[1] This is a fictitious name intended to protect the alleged victim's anonymity.
[2] Ironically, on the return date of the TRO, the Family Part found insufficient evidence of defendant's purpose to harass, and vacated the restraints and dismissed the domestic violence complaint against him. This, of course, in no way vitiated the legal viability of the TRO at the time the State alleges defendant's criminal conduct took place.