946 A.2d 602 (2008)
400 N.J. Super. 164
STATE of New Jersey, Plaintiff-Appellant
v.
Philip J. CASTAGNA, Defendant-Respondent.
No. A-4402-06T5
Superior Court of New Jersey, Appellate Division.
Argued October 9, 2007.
Decided May 12, 2008.
*605 Melissa A. Piccioni, Assistant Prosecutor, argued the cause for appellant (Robert D. Bernardi, Burlington County Prosecutor, attorney; Jennifer B. Paszkiewicz, on the brief).
Richard W. Berg, Trenton, argued the cause for respondent (Robin Kay Lord, attorney, Newtown, PA; Ms. Lord and Mr. Berg, on the brief).
Before Judges COLLESTER, C.S. FISHER and C.L. MINIMAN.
*606 The opinion of the court was delivered by
COLLESTER, J.A.D.
Pursuant to leave granted, the State appeals from the February 8, 2007, order of the trial court denying its motion in limine for admission of certain evidence under the exception to N.J.R.E. 404(b) and as res gestae evidence, and from the March 23, 2007, order denying the State's motion for reconsideration. We affirm in part and reverse in part.
Based on the plenary hearing and the State's offer of proof, the salient facts are as follows. Defendant Philip Castagna was Chief of Police of the City of Bordentown when he married Joyce Leopold in 1998. Joyce testified that on June 8, 2003 when she returned from her daughter's dance recital, she discovered that defendant had packed a suitcase and left the home. She called his mobile telephone, but there was no response. Within a day or so she changed the locks on the doors. Defendant returned to the home on June 13, 2003, and confronted Joyce outside. They argued, he accused her of cheating on him, and Joyce went in the house and locked the door. Defendant demanded to come inside and told her it was illegal to lock him out. Joyce testified defendant pounded on the back sliding doors and yelled, "I'm going to get you and that goddamn little bitch of yours." The following day Joyce noticed the door knob on the door from the house to the garage was missing. That evening she went to the police department and filed a complaint under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. A temporary restraining order (TRO) issued that night which prohibited defendant from returning to the marital home and from "making or causing anyone else to make an harassing communication" to his wife.
On the evening of July 2, 2003, defendant visited Joyce's uncle, Santo Celia, with whom defendant had a good relationship. At the hearing, Celia testified that defendant told him that he had to surrender his police weapon because of the TRO, and he was afraid he would lose his job unless Joyce withdrew the complaint. He said he worked hard all his life and that if Joyce "continued fucking with my rights and my pension, I'll lose everything." He said he still loved Joyce and needed Celia's help in conveying that to her. Later defendant became more agitated and said, "If you don't talk some sense into her you gonna see me on the front page of the Trenton Times." Celia responded, "Philip, I'm going to pretend I didn't hear that." Defendant at one point said, "[T]hey took my guns away, but I can get another one." Celia again told defendant, "I'm going to pretend I didn't hear that." Celia testified that while he knew defendant was agitated, he did not think defendant would do anything to Joyce or himself. At the end of the conversation Celia told defendant he would do what he could to help but could not promise anything. After talking to his wife, he decided not to get further involved.
On July 4, 2003, Joyce's home was slightly damaged by a fire, which was determined to be arson. A neighbor reported seeing an unidentified man with a gasoline can running from Joyce's yard and driving off in a van.
Four days later, on July 8, 2003, Celia's wife told Joyce that defendant came to her house and talked with her husband about their marital problems. The following day Joyce called Celia to learn more about his conversation with defendant. Perceiving some of defendant's comments to Celia as threats against her, Joyce signed a criminal *607 complaint against defendant on July 12, 2003, alleging terroristic threats, N.J.S.A. 2C:12-3a, and fourth-degree contempt for violating the temporary restraining order, N.J.S.A. 2C:29-9b. Defendant was suspended as Bordentown police chief on July 30, 2003. A final restraining order was entered pursuant to Joyce's domestic violence complaint on August 5, 2003.
The prosecutor downgraded the charges in Joyce's criminal complaint to the disorderly persons offense of harassment, N.J.S.A. 2C:33-4a, and contempt by violating the TRO, N.J.S.A. 2C:29-9b, and the matter was assigned for trial to the Burlington County Family Court. After a bench trial, on May 7, 2004, defendant was found guilty of both charges. He was sentenced to a one-year probationary term, assessed a $1,000 fine in addition to a VCCB assessment, a SNSF assessment, and a penalty under the domestic violence statute. The sentencing judge further ordered a forfeiture of defendant's public office as Bordentown Chief of Police and a permanent debarment from future public office pursuant to N.J.S.A. 2C:51-2(a)(2) and (d). Defendant appealed his conviction and sentence.
While defendant's appeal was pending, Gary Hall, described as defendant's neighbor and friend, came forward to talk to the members of the Burlington County Prosecutor's Office. He told investigators he set the July 4, 2003 fire at defendant's request and that defendant later asked him to help him kill Joyce. Hall told investigators he did not want to be involved in a murder, and he agreed to cooperate and "wore a wire" to record conversations with defendant.
Defendant was indicted on May 2, 2005, for conspiracy to commit murder, N.J.S.A. 2C:5-2a(1) and N.J.S.A. 2C:11-3a(1); aggravated arson, N.J.S.A. 2C:17-1a(2); and two counts of contempt, N.J.S.A. 2C:29-9.[1] Over a year later, on August 21, 2006, while the trial on the indictment was still pending, we issued an opinion reversing defendant's disorderly persons convictions on grounds that the evidence was insufficient for a finding of guilt beyond a reasonable doubt. State v. Castagna, 387 N.J.Super. 598, 608-09, 905 A.2d 415 (App. Div.), cert. denied, 188 N.J. 577, 911 A.2d 69 (2006).
The State theorizes that defendant conspired to commit arson and kill his wife because she filed a domestic violence complaint which resulted in a TRO and later filed criminal charges which led to his suspension, conviction, sentence, and forfeiture of his public office. The State's motion in limine was for a determination that the following evidence was admissible under N.J.R.E. 404(b) to prove defendant's motive and, alternatively, as res gestae evidence of the crimes charged: (1) the incident of alleged domestic violence on June 13, 2003; (2) the TRO issued on June 15, 2003; (3) the July 2, 2003 conversation between defendant and Celia; (4) the criminal complaint signed by Joyce on July 12, 2003; (5) defendant's suspension from his job as chief of police on July 30, 2003; (6) the final restraining order issued on August 5, 2003; (7) defendant's disorderly persons conviction on May 7, 2004; and (8) the sentence mandating forfeiture of his job as police chief and prohibition of future public employment. The trial judge held that none of the proffered evidence was admissible because in each instance the probative value was outweighed by its apparent prejudice and, furthermore, other less prejudicial evidence was available to the State through the testimony of the co-conspirator Gary Hall. We granted leave *608 to appeal on these evidential issues and stayed the trial pending our resolution.
It is a cardinal principle that evidence with probative value to a material issue is relevant. N.J.R.E. 401; State v. Hutchins, 241 N.J.Super. 353, 358, 575 A.2d 35 (App.Div.1990). And all relevant evidence is admissible unless excluded by another evidential rule or statute. N.J.R.E. 402; State v. Muhammad, 359 N.J.Super. 361, 368, 820 A.2d 70 (App.Div.), certif. denied, 178 N.J. 36, 834 A.2d 408 (2003). N.J.R.E. 403 and N.J.R.E. 404(b) are related evidential rules that may exclude relevant evidence. Rule 403 is a residual rule to be considered after all other exclusionary principles have been resolved in favor of admissibility. It reads as follows:
Except as otherwise provided by these rules or other law, relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence.
[N.J.R.E. 403.]
Rule 403(a) requires the balancing or weighing of probative value against undue prejudice and places the burden on a party urging exclusion to show that the prejudice substantially outweighs the probative value to justify exclusion of the evidence. See State v. Long, 173 N.J. 138, 163-65, 801 A.2d 221 (2002); State v. Morton, 155 N.J. 383, 453, 715 A.2d 228 (1998), cert. denied, 532 U.S. 931, 121 S.Ct. 1380, 149 L.Ed.2d 306 (2001).
Rule 404 generally proscribes admission of evidence of a person's character or a trait of character. Subsection (b) specifically excludes evidence of an accused's "other crimes, wrongs or acts" to prove that the defendant is in general disposed toward criminal acts or wrongful behavior or that he or she is a "bad person" who must be guilty of the crime charged. See generally State v. Reddish, 181 N.J. 553, 608, 859 A.2d 1173 (2004); State v. Nance, 148 N.J. 376, 386, 689 A.2d 1351 (1997). However, so-called "other crimes" are admissible for certain specified purposes. The Rule reads as follows:
[E]vidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.
[N.J.R.E. 404(b).]
Even when the evidential proffer relates to a permissible purpose under Rule 404(b) and is both relevant and material to a fact in issue, the trial judge must nonetheless engage in "a careful and pragmatic evaluation" focusing on "the specific context in which the evidence is offered" by weighing its probative value against its apparent or undue prejudice. State v. Stevens, 115 N.J. 289, 300, 558 A.2d 833 (1989); State v. Harris, 105 N.J.Super. 319, 252 A.2d 160 (App.Div.1969), certif. denied, 59 N.J. 361, 283 A.2d 105 (1971). Rule 404(b) is more restrictive and requires more of a "searching inquiry" than Rule 403, which precludes relevant evidence only if the risk of undue prejudice "substantially" outweighs the probative value. Furthermore, unlike Rule 403, it is the party seeking to admit other-crimes evidence who bears the burden under Rule 404(b) of establishing that the probative value of other-crimes evidence is not outweighed by its apparent prejudice. Reddish, supra, 181 N.J. at 608, 859 A.2d 1173.
*609 To assist trial judges in considering admission or exclusion of Rule 404(b) evidence our Supreme Court developed and promulgated a four-pronged test for admissibility in State v. Cofield, 127 N.J. 328, 338, 605 A.2d 230 (1992):
(1) The evidence of the other crime must be admissible as relevant to a material issue;
(2) It must be similar in kind and reasonably close in time to the offense charged;
(3) The evidence of the other crime must be clear and convincing; and
(4) The probative value of the evidence must not be outweighed by its apparent prejudice.
In the instant case the trial judge excluded all the State's proffered evidence after finding the apparent prejudice outweighed the probative value and that other evidence would adequately serve the State's purposes. He rejected the proposed testimony of Joyce on the alleged domestic violence incident, stating:
[T]he Court does not find that that particular incident is of sufficient probative value that again would outweigh its inherent prejudice, again, to indicate that Mr. Castagna is a bad person. . . . [T]he probative value . . . is outweighed by its inherent prejudice, again, because there's other ways to prove the conspiracy in this case. And, again, the best evidence in this case is going to be Mr. Hall's evidence. . . .
The judge also excluded proof of both the TRO issued on June 15, 2003, and the FRO on August 5, 2003, for similar reasons:
[I] think the case law is relatively clear, that the presenting of temporary restraining orders, specifically [a] domestic violence restraining order, because of their inherent prejudice, must be viewed very carefully. . . . [M]y reading is that the Court frowns upon the admissibility of those pieces of evidence because they're highly prejudicial. . . . As to the final restraining order [ ] and the temporary restraining order. . . . [t]he Court finds that the probative value . . . is outweighed by its apparent prejudice for the simple reason  and this is going to be the finding as to all of the Court's findings as to the other elements in the matters that are before the Court, there is other evidence. . . . The best evidence in this case, and I've kind of said this throughout this case, is the testimony of Mr. Hall. . . . It's the best evidence. And, when you weigh it against the reluctance on the part of the Courts in this state to admit final restraining orders and temporary restraining orders because of this  for their inherent prejudice clearly the probative value . . . of this particular evidence is not outweighed by its prejudicial effect.
The trial judge precluded the proposed testimony of Celia of his July 2 conversation with defendant by again concluding that the risk of undue prejudice outweighed its probative value as well as by finding that the evidence was not material since Celia believed none of defendant's statements were threatening.
Now, as to the defendant's conversation with Santo Celia, . . . I actually find his testimony to be relatively credible. . . . [T]he crucial portion of his testimony is that, in fact, he did not feel that [Joyce] was jeopardized. . . . [W]hether it was a reference to the weapons, reference to the Trentonian, the bottom line is, in fact, he did not take it as being threatening . . . I am sure if he thought that were the case he would have taken steps. . . . [I]f, in fact, this evidence was of such significance that, again, it would have overwhelming probative value as to some sort of propensity or as to some *610 sort of intent, Mr. Celia would have taken action. . . . So, again, because of the existence of other evidence in this case as to the existence of a conspiracy . . . and, again, that best evidence is Mr. Hall, the Court's going to find as to the conversation with Santo Celia that the probative value is outweighed by its apparent prejudice which is this is highly prejudicial stuff.
The trial judge next excluded evidence that defendant was suspended as police chief, stating that,
I'm not so sure how that's relevant, to be honest with you, but, again, the Court's going to find that the existence of other evidence to show the existence of the conspiracy that it's probative value which I consider to be not that probative is . . . outweighed by its apparent prejudice.
The fact that defendant was convicted of disorderly persons offenses and was stripped of his public office was excluded based on the judge's finding of undue prejudice as well as the fact that the convictions were overturned on appeal.
[A]s to the May 7, 2004 conviction on disorderly person's offenses . . . the Court finds . . . the fact that the conviction was overturned [ ] severely negates its probative value . . . and even though the jury would be told that, in fact, the conviction was overturned, . . . the prejudice would outweigh its apparent probative value.
The court also rejected the State's alternative argument that the proffered evidence was admissible as res gestae evidence.
[I]f you take a look at [N.J.R.E. 803(c)(1) and (2)], one of the elements in those rule[s] is that because it goes to basically some issues involving mental state, that's the reason why there is an exception to the Hearsay Rule, that there must be in sufficient time and place in order to add to its credibility. . . . [T]he basic connection here is that it has to be in sufficient time. . . . [A]ll this evidence is 2003 except for the 2004 conviction . . . it's not sufficient in time to, in fact, to include it as res gestae evidence.
[A]gain, you'd still have to take a look at it within the 403 context . . . and again, 403 is probative versus prejudice. And, because of the existence of the best evidence in this case, which happens to be the testimony of Mr. Hall  and I know there's damaging information that  on those tapes. And, again, if, in fact, the jury believes the evidence on those tapes, [there is] more than sufficient enough evidence for the State to prove that there's a conspiracy, but these incidents would be just cumulative and what I sometimes call piling on, which is not the purpose of 403, 404b, or 803. So, for all those reasons the application for the admissibility of the six incidents matters including . . . decisions of the Court together with the final restraining order is denied.
N.J.R.E. 404(b) specifically admits other-crimes evidence for proof of motive subject to the Cofield test. State v. Covell, 157 N.J. 554, 564, 725 A.2d 675 (1999). A wider range of evidence may be admissible to prove motive as long as there is a logical connection between the alleged motive and the other-crimes evidence. State v. Williams, 190 N.J. 114, 125, 919 A.2d 90 (2007); Long, supra, 173 N.J. at 162, 801 A.2d 221; State v. Koskovich, 168 N.J. 448, 483-84, 776 A.2d 144 (2001); State v. Sanders, 320 N.J.Super. 574, 584, 727 A.2d 1063 (App.Div.1999), aff'd, 163 N.J. 2, 746 A.2d 451 (2000). Moreover, motive is a material issue in dispute where the defendant asserts innocence, State v. Amodio, 390 N.J.Super. 313, 330, 915 A.2d *611 569 (App.Div.), certif. denied, 192 N.J. 477, 932 A.2d 28 (2007), or claims entrapment, State v. Davis, 390 N.J.Super. 573, 591, 916 A.2d 493 (App.Div.), certif. denied, 192 N.J. 599, 934 A.2d 640 (2007). As stated by our Supreme Court in an earlier case:
All evidentiary circumstances which are relevant to or tend to shed light on the motive or intent of the defendant or which tend fairly to explain his actions are admissible in evidence against him although they may have occurred previous to the commission of the offense. [State v. Rogers, 19 N.J. 218, 228, 116 A.2d 37 (1955) (quoted with approval in Covell, supra, 157 N.J. at 565, 725 A.2d 675).]
See also State v. Carter, 91 N.J. 86, 106, 449 A.2d 1280 (1982).
In this case, motive is relevant and material under the State's theory that Joyce's assertion of domestic violence followed by the filing of her complaint and the issuance of the TRO led defendant to believe that both his job and his pension were in jeopardy unless she recanted, as he indicated in his conversations with Celia. Thereafter, the criminal complaint signed by Joyce led to his suspension, conviction, and forfeiture of his job. According to the State's theory, all of these sequential events gave rise to a motive to seek revenge and conspire to kill Joyce. The State argues that exclusion of the evidence handcuffs the prosecution by depriving it of showing the jury why this otherwise law-abiding chief law enforcement officer would plot to murder his wife. We agree that in this case the preclusion of evidence of motive would hinder the State's case. It would be the equivalent of a production of MacBeth without the witches. Accordingly, the State's proffer satisfies the first part of the Cofield test of admissibility as relevant to the material issue of motive.
The State's proffer also satisfies the second part of the Cofield test, which states that the other-crimes evidence must be "similar in kind" and "reasonably close in time" to the crime charged. But when motive is the object of the proffered evidence, similarity is not a requirement for admissibility. Williams, supra, 190 N.J. at 131-32, 919 A.2d 90; State v. Collier, 316 N.J.Super. 181, 194, 719 A.2d 1276 (App.Div.1998), aff'd o.b., 162 N.J. 27, 738 A.2d 369 (1999). With regard to whether the evidence was reasonably close in time, the event spanned a period of less than one year from alleged acts of domestic violence on June 13, 2003 to the May 7, 2004 sentence date when defendant's position as police chief was forfeited. Our courts have found the "reasonably close in time" aspect to be satisfied where there were longer periods of time between the prior act and the present charge. See, e.g., State v. Krivacska, 341 N.J.Super. 1, 41, 775 A.2d 6 (App.Div.), certif. denied, 170 N.J. 206, 785 A.2d 435 (2001), cert. denied, 535 U.S. 1012, 122 S.Ct. 1594, 152 L.Ed.2d 510 (2002) (sexual assaults about two years apart were "reasonably proximate in time"). Furthermore, the evidence is proffered as an interrelated series of events over the course of about a year leading to defendant's criminal acts. See State v. Baluch, 341 N.J.Super. 141, 192, 775 A.2d 127 (App.Div.), certif. denied, 170 N.J. 89, 784 A.2d 721 (2001).
The third part of the Cofield test requiring clear and convincing evidence of the prior act or acts is satisfied since the State's proofs relate to filed complaints and judicial orders as well as to the testimony of Joyce and Sam Celia which the trial judge accepted for purposes of the Cofield test.
Thus, the major issue sub judice relates to the fourth part of Cofield, which *612 mandates that the probative value of the evidence must not be outweighed by its apparent prejudice. The balancing of these factors is a delicate task for a trial judge. Williams, supra, 190 N.J. at 131-33, 919 A.2d 90; State v. Jenkins, 178 N.J. 347, 365-66, 840 A.2d 242 (2004); State v. Hernandez, 170 N.J. 106, 127, 784 A.2d 1225 (2001). However, as with all 404(b) evidence, greater leeway is given when the evidence is proffered on the issue of motive, and there must be a "very strong" showing of prejudice to exclude evidence of a defendant's motive. Covell, supra, 157 N.J. at 570, 725 A.2d 675 (holding that in a prosecution for lurking, evidence of a prior act of lewdness by defendant was admissible to establish motive). See also Nance, supra, 148 N.J. at 389, 689 A.2d 1351 (evidence of prior jealous episodes by defendant toward his former girlfriend held admissible to show his motive in shooting her male friend); State v. Erazo, 126 N.J. 112, 130-31, 594 A.2d 232 (1991) (upholding admission of evidence that defendant had been convicted of prior murder as necessary to support State's theory that defendant killed victim to prevent her from causing revocation of his parole); State v. Baldwin, 47 N.J. 379, 391, 221 A.2d 199, cert. denied, 385 U.S. 980, 87 S.Ct. 527, 17 L.Ed.2d 442 (1966) (evidence that victim was going to testify against defendant in a robbery trial admissible to show motive for killing the victim); State v. Crumb, 307 N.J.Super. 204, 232-33, 704 A.2d 952 (App. Div.1997), certif. denied, 153 N.J. 215, 708 A.2d 66 (1998) (defendant's writings showing hatred of African Americans held admissible to show motive for killing of stranger); State v. Engel, 249 N.J.Super. 336, 372-74, 592 A.2d 572 (App.Div.), certif. denied, 130 N.J. 393, 614 A.2d 616 (1991) (prior threats and physical violence admissible to establish motive for murder of former wife); State v. Slocum, 130 N.J.Super. 358, 362-63, 327 A.2d 244 (App.Div. 1974) (testimony that victim previously testified against defendant in prior prosecution held admissible to show malice or revenge).
In holding that the probative value of the proffers by the State were outweighed by their apparent prejudice, the trial judge placed great emphasis on his conclusion that other evidence, namely the trial testimony of Hall, would serve the purpose by proving the criminal conspiracy. The judge correctly noted that as part of the balancing test for 404(b) evidence, a court must consider whether other, less prejudicial evidence will adequately prove the material issue sought to be proved by the Rule 404(b) evidence. In State v. Oliver, 133 N.J. 141, 151, 627 A.2d 144 (1993), the Supreme Court stated that "an important factor in weighing the probative value of other-crime evidence is whether other, less-inflammatory evidence can prove the same fact in issue." Conversely, if there is no other less prejudicial evidence equally probative on the same issue, the evidence is admitted subject to the Cofield test. State v. Marrero, 148 N.J. 469, 489, 691 A.2d 293 (1997).
In evaluating the considerable weight attached by the trial judge to Hall's projected testimony, we are hampered by the absence in the record presented to us of Hall's grand jury testimony, any statement made by him, any transcript of conversations between Hall and defendant, or even a synopsis of Hall's projected testimony. Furthermore, the record reflects that the trial judge also lacked any testimony or statements by Hall at the time of his Rule 404(b) decision. While the judge stated in the course of his oral opinion that conversations with defendant recorded by Hall would incriminate the defendant, the record indicates that he had not heard the recordings, since an audibility hearing was pending when the judge gave his ruling on *613 the State's Rule 404(b) proffers. It appears that the judge assumed that Hall's trial testimony regarding the conspiracy would be a suitable and sufficient alternative to the State's proffer to prove motive. On the record before us we cannot so conclude. We can assume that Hall will testify as to an agreement to conspire, the substance of the conspiracy, and any actions or statements in furtherance of the conspiracy, but we have no knowledge as to whether he will testify to any conversation in which the defendant discussed his reasons for enlisting Hall in a plan to murder his wife or whether any testimony of Hall as to defendant's motive would be the same as the evidence offered by the State. Contrary to the ruling of the trial judge, we cannot conclude that any projected testimony by Hall will adequately present the State's theory of defendant's motive for defendant's alleged criminal action. Even assuming Hall will testify that defendant was motivated by animus toward Joyce, this testimony is hardly an adequate substitute for the State's evidence that defendant's motivation was largely the fear of loss of his job and pension. Furthermore, as we have noted, the Rule 404(b) evidence proffered by the State relates to events that cannot be disputed, and it is safe to assume that Hall's testimony as an alleged co-conspirator will be seriously challenged. Finally, we note from the transcript of the subsequent hearing on the admissibility of the tapes under State v. Driver, 38 N.J. 255, 287, 183 A.2d 655 (1962), that the judge ruled that any statements incorporating any part of the State's Rule 404(b) evidence proffers were to be excluded as part of his earlier ruling. Therefore, it appears that the judge concluded all evidence of the State's theory of defendant's motive was inadmissible.
In addressing the State's proffers in the context of the balancing test of Rule 404(b) and the application of the Cofield test, we begin by acknowledging that our scope of review of an evidential Rule 404(b) ruling is under the abuse of discretion standard. Marrero, supra, 148 N.J. at 483, 691 A.2d 293; State v. Ramseur, 106 N.J. 123, 266, 524 A.2d 188 (1987). We accord trial judges broad discretion in the application of the Rule 404(b) balancing test and the Cofield test. Brenman v. Demello, 191 N.J. 18, 31, 921 A.2d 1110 (2007); State v. DiFrisco, 137 N.J. 434, 496, 645 A.2d 734 (1994), cert. denied, 516 U.S. 1129, 116 S.Ct. 949, 133 L.Ed.2d 873 (1996). Our deference is in recognition that the admissibility of extrinsic evidence of other crimes or wrongs is best determined by the trial judge with more intimate knowledge of the case who is therefore in the best position to weigh the probative value versus potential prejudice of the proffered evidence. State v. Koedatich, 112 N.J. 225, 313, 548 A.2d 939 (1988), cert. denied, 488 U.S. 1017, 109 S.Ct. 813, 102 L.Ed.2d 803 (1989). We therefore defer to the trial judge's decision to admit or exclude such evidence absent a misapplication of the Rule 404(b) balancing test or the Cofield test amounting to "a clear error of judgment." DiFrisco, supra, 137 N.J. at 496, 645 A.2d 734. See also Williams, supra, 190 N.J. at 124, 919 A.2d 90; Reddish, supra, 181 N.J. at 608, 859 A.2d 1173.
Turning to the State's proffers, we first consider Joyce's testimony of the events of June 8 and June 13, 2003, which led to her domestic violence complaint and the issuance of the TRO two days later. Evidence of a history of abuse of a victim by a defendant has been held admissible to prove motive. See Engel, supra, 249 N.J.Super. at 372-74, 592 A.2d 572; State v. Ellis, 280 N.J.Super. 533, 546-47, 656 A.2d 25 (App.Div.1995). However, in this instance the facts of defendant's alleged domestic violence are not relevant or necessary *614 to prove his motive and would serve only the inference that he had a propensity to commit violence. Accordingly, we agree with the trial judge's ruling that the probative value of this evidence was outweighed by its apparent prejudice.
On the other hand, the TRO is very relevant and material to the State's theory of motive since the State contends its issuance was the impetus for defendant to ask Hall to commit arson and later led to the criminal charges filed by Joyce against defendant, which in turn culminated in the forfeiture of defendant's job as police chief and loss of his pension. Under our law, the admission of domestic violence restraining orders as Rule 404(b) evidence is an issue of great sensitivity. In State v. Chenique-Puey, 145 N.J. 334, 678 A.2d 694 (1996), the victim obtained a domestic violence restraining order alleging terroristic threats as the predicate offense. Four years later the defendant returned to the former residence and threatened to shoot the victim and her paramour. He was charged with terroristic threats and contempt for violating the restraining order. Defendant moved to sever the terroristic threats charge because evidence of the order could persuade the jury that he had made terroristic threats against the victim. The Supreme Court agreed and reversed the denial of severance, stating:
Admission of the order could have prejudiced unduly defendant by bolstering the victim's testimony regarding defendant's prior bad acts. A jury could interpret the order as a judicial imprimatur on the victim's testimony. The order creates the inference that if a court found defendant guilty of domestic violence in a prior proceeding, that defendant is more likely guilty of the present terroristic-threat charges. . . . Accordingly, we hold that the trial court should have severed the charge on terroristic threats to kill from the trial of the contempt of the domestic violence restraining order.
[Id. at 343, 678 A.2d 694.]
The Supreme Court directed that when the contempt of the domestic violence restraining order and the underlying criminal offense arise from the same criminal event, the charges should be tried sequentially with the underlying offense tried first. Ibid. See also State v. Lozada, 357 N.J.Super. 468, 815 A.2d 1002 (App.Div. 2003) (reversing denial of defendant's motion to sever a charge of stalking and contempt of a restraining order). The Court directed that the restraining order was inadmissible at the first trial except to impeach the defendant if he testified. Chenique-Puey, supra, 145 N.J. at 343, 678 A.2d 694. However, the Court carved out an exception, stating that a restraining order was admissible at the trial of the underlying offense when it was an essential element of the crime. Id. at 342, 678 A.2d 694.
In State v. Silva, 378 N.J.Super. 321, 875 A.2d 1005 (App.Div.2005), we applied the exception in a case where the defendant was charged with burglary and aggravated assault as well as contempt of a domestic violence restraining order. The contempt charge was severed and the trial proceeded on the burglary charges. The trial judge precluded the State from introducing evidence of the existence of a TRO in spite of the State's argument that without that evidence it would be unable to prove a necessary element of the burglary charge, namely that the defendant was not licensed or privileged to enter the residence he formerly shared with the victim. See N.J.S.A. 2C:18-2(a). We reversed, agreeing that the State could not meet its burden of proof on the burglary charge without evidence of the TRO. To ameliorate prejudice to the defendant, we *615 required that the proofs of the TRO exclude reference to the acts of domestic violence and directed the trial judge to carefully instruct the jury not to speculate as to the basis for the TRO.
There is no need, however, for the jury to know the legal basis for the issuance of the restraints. In fact, to avoid any possibility of mischievous speculation, the trial court should instruct the jury, using clear and emphatic language, that they are not to engage in any conjecture as to the legal or factual basis for the restraints. The origin of these legal limitations is simply irrelevant to the question of whether the State has proven defendant guilty of burglary beyond a reasonable doubt.
Evidence of the restraints, therefore, must be presented to the jury in a sanitized fashion, stripped of any connection to any incident of domestic violence.
[Id. at 327, 875 A.2d 1005.]
We also acknowledged the potential prejudice in the admission of the TRO document and directed it to be sanitized to exclude connection to an act of domestic violence.
Redacting the original TRO to delete any reference to a domestic violence incident is not practical, however. The form of order used by the Family Part is not susceptible to this type of modification.
The alternative is for the judge presiding over the criminal trial to describe accurately for the jury, as a given fact, the existence and scope of the relevant restraints, while omitting any reference or link to a prior act of domestic violence. In so doing, the judge must also instruct the jury that the State remains obligated to prove, beyond a unreasonable doubt, each and every element of the crime of burglary. The goal is to afford the State a fair opportunity to present vital evidence to the jury, without causing prejudice to defendant.
[Id. at 327-28, 875 A.2d 1005.]
The case at bar is unlike Silva since the TRO is not necessary to prove an element of the underlying crime charged, but, as we have noted, it is necessary for the State's proof of motive. Support for its admissibility is found in our decision of Amodio, supra, 390 N.J.Super. at 313, 915 A.2d 569. There, defendant was convicted of felony murder in the arson death of his former paramour and her son. The paramour had earlier obtained a restraining order which forced defendant out of the house he bought a few months before. After a neighbor reported the fire, defendant was found "smoldering" in the driveway. Defendant made no objection to the TRO and testified that he was at the house with his paramour's consent. We rejected defendant's claim of error in the trial judge's instruction on the jury's consideration of the TRO. In so holding, we stated that proper use of the TRO included not only impeachment of the defendant but also proof of defendant's motive to commit the crimes charged.
The instruction was entirely consistent with N.J.R.E. 404(b) . . . [D]efendant's motive was a material issue in dispute. He testified that he did not kill Lisa and did not start the fire that took Kallin's life. Clearly, the credibility of these statements was at issue. Furthermore, the temporary restraining order provided evidence that defendant may have been motivated to commit the crimes because Lisa had obtained the order, which barred him from having any contact with her and forced him to leave the house he had recently purchased.

[Id. at 330, 915 A.2d 569 (emphasis added).]
We conclude that evidence of the TRO should be admitted with careful instruction *616 to the jury that its use be limited to the issue of motive asserted by the State and that it not be considered as proof of any act of violence by defendant. The jury is also to be told that it may not speculate as to any legal or factual basis for the TRO. Silva, supra, 378 N.J.Super. at 327-28, 875 A.2d 1005; Amodio, supra, 390 N.J.Super. at 330-31, 915 A.2d 569. Moreover, in the instant case the court may charge the jury that the TRO was issued ex parte and without defendant's knowledge.
We also find that defendant's conversation with Celia is clearly relevant to the State's motive thesis. Celia testified that defendant was upset because Joyce's domestic violence complaint and the TRO affected his job as police chief since he had to surrender his police weapon. Defendant's comments as to what could happen if Joyce did not drop the domestic violence action were perceived by her as threats and caused her to file the criminal complaint against defendant, which later led to his suspension, conviction and forfeiture of his job.
Moreover, these statements by defendant were admissible under N.J.R.E. 803(c)(3) as reflective of his state of mind. Long, supra, 173 N.J. at 154-55, 157, 801 A.2d 221; State v. Downey, 237 N.J.Super. 4, 12, 566 A.2d 822 (App.Div. 1989), certif. denied, 121 N.J. 627, 583 A.2d 323 (1990); State v. Scott, 236 N.J.Super. 264, 267, 565 A.2d 716 (App.Div.1989). The statements were admissible as substantive evidence for that purpose. State v. Boyer, 221 N.J.Super. 387, 399, 534 A.2d 744 (App.Div.1987), certif. denied, 110 N.J. 299, 540 A.2d 1280 (1988). The comments of defendant are also admissible as statements against his interest. N.J.R.E. 803(c)(25); State v. Abrams, 140 N.J.Super. 232, 236, 356 A.2d 26 (App.Div.1976), aff'd o.b., 72 N.J. 342, 370 A.2d 852 (1977); see also Covell, supra, 157 N.J. at 572, 725 A.2d 675 ("A statement admitted under N.J.R.E. 803(b)(1) does not have to be contrary to the party's interest when made.").
We disagree with the trial court's analysis that the probative value of the defendant's conversation with Celia was reduced by Celia's testimony that he did not consider defendant's statements to constitute threats against Joyce. First of all, Joyce obviously thought that defendant was threatening her, for she filed a criminal complaint based on the comments. More significantly, the issue before the trial judge was admissibility, and it is for the jury to determine what weight, if any, to give to the comments. Finally, we find no basis to exclude the conversation between defendant and Celia under either Rule 403 or Rule 404(b).
While we hold that the TRO is admissible under Rule 404(b) with careful instructions to the jury, we find that evidence of the FRO is not admissible. The FRO was entered after the July 4, 2003 fire, the filing of criminal charges by Joyce, and defendant's suspension as police chief. The State has also not shown it was a necessary link in the chain of events that gave rise to defendant's alleged motive to kill Joyce, and its prejudice is obviously significant since it indicates a "judicial imprimatur" of defendant's guilt of a prior incident of domestic violence against Joyce. See Chenique-Puey, supra, 145 N.J. at 343, 678 A.2d 694.
On the other hand, the fact that Joyce filed criminal charges against defendant after the July 4, 2003 fire, which resulted in his suspension, is clearly related to motive under the State's theory if those events occurred prior to defendant's entry into the conspiracy to kill Joyce. On that assumption we find the evidence is admissible, and the jury is to be instructed that both the complaint and the suspension *617 are for consideration only as to the State's claim of motive so that the jury members are not to speculate on the validity of the charges or whether defendant was properly suspended. Similarly, on the same assumption, defendant's conviction on disorderly persons charges and the sentence forfeiting his office are relevant to the State's theory of defendant's motive for conspiring to kill his wife, thereby admissible with limiting instructions including the fact that defendant's convictions were subsequently reversed on appeal and a judgment of not guilty was entered on the charges.
To reiterate, we affirm the exclusion of evidence of the alleged acts of domestic violence and the FRO. We reverse and hold admissible the State's proffer of evidence as to the TRO, the statements of defendant in his July 2, 2003, conversation with Celia, the criminal charges filed by Joyce on July 12, 2003, as well as defendant's conviction on the downgraded disorderly persons charge on May 7, 2004, and the sentence terminating him as police chief by statutory forfeiture of his office.
Because of our determination as to admissibility of the State's evidential proffers under Rule 404(b), we need not discuss in detail the State's alternative argument that all of the evidence is admissible under the res gestae exception. Evidence admissible as res gestae is "part and parcel" of the crime charged. State v. Martini, 131 N.J. 176, 239-40, 619 A.2d 1208 (1993), cert. denied, 516 U.S. 875, 116 S.Ct. 203, 133 L.Ed.2d 137 (1995) (threats against victim's spouse and theft of victim's car held not Rule 404(b) evidence but "part and parcel" of a kidnapping); State v. L.P., 338 N.J.Super. 227, 239, 768 A.2d 795 (App.Div.), certif. denied, 170 N.J. 205, 785 A.2d 434 (2001) (prior sexual assaults of child victim formed a continuous course of conduct with overriding objective that tied together disparate conduct). See also Long, supra, 173 N.J. at 153-58, 801 A.2d 221 (statement by victim to mother of conversation with defendant held admissible in murder case under Rule 803(c)(3) as res gestae because the statements were "part of the `mosaic' of the criminal event").
In this case, however, the State's various proffers were not "woven into the fabric of the planned crime," State v. Mule, 114 N.J.L. 384, 392, 177 A. 125 (E. & A.1935), or "like the Master's robe . . . of one piece, without seam, woven from the top throughout," Robertson v. Hackensack Trust Co., 1 N.J. 304, 312, 63 A.2d 515 (1949). Rather, they were disparate events, not part of the crimes charged, and thus not part of the res gestae.
Affirmed in part. Reversed in part.
NOTES
[1] The indictment was not made part of the record.