**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1849-17T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

TIFANI K. YOUNG, a/k/a
TIFANI K. YOUNG, JR.,

      Defendant-Appellant.

_____

Submitted October 22, 2018 – Decided  December 3, 2018

Before Judges Fasciale, Gooden Brown and Rose.

On appeal from Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 16-09-0970.

Joseph E. Krakora, Public Defender, attorney for appellant (John Douard, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Arielle E. Katz, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Tried by a jury, defendant Tifani K. Young was found guilty of first-degree robbery, N.J.S.A. 2C:15-1(a)(2) (count one); second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2(a)(1) and N.J.S.A. 2C:15-1(a)(2) (count two); first-degree witness tampering to cause false testimony, N.J.S.A. 2C:28-5(a)(1) (count seven); first-degree witness tampering to withhold testimony, N.J.S.A. 2C:28-5(a)(2) (count eight); and first-degree witness tampering to obstruct official proceedings, N.J.S.A. 2C:28-5(a)(5) (count nine). At sentencing, the trial court merged count two with count one, and counts eight and nine with count seven. The court imposed a ten-year custodial term on count one, with an eighty-five percent parole ineligibility period mandated by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, plus a consecutive fifteen-year term on count seven, N.J.S.A. 2C:28-5(e), for an aggregate twenty-five year sentence.

In his brief on appeal, defendant raises the following points for our consideration:

POINT I

THE VIDEO WAS HIGHLY INFLAMMATORY N.J.R.E. 404(b) EVIDENCE OF BAD ACTS UNCONNECTED TO THE ROBBERY, WAS HIGHLY PREJUDICIAL WITH LITTLE PROBATIVE VALUE, IN VIOLATION OF N.J.R.E. 403, AND WAS INADMISSIBLE AS INTRINSIC EVIDENCE.

POINT II

[D.H.]'S[1] TESTIMONY THAT [DEFENDANT] RECORDED TWITTER MESSAGES THAT APPEARED TO THREATEN [D.H.] FOR HITTING HIS COUSIN WAS INADMISSIBLE EVIDENCE PURSUANT TO N.J.R.E. 404(b).
[(Not raised below)][2]

POINT III

THE JUDGE FAILED TO QUALIFY VAN FOSSEN AS AN EXPERT WITNESS DESPITE TESTIMONY THAT WAS BEYOND THE KEN OF THE AVERAGE JUROR, AND PERMITTED HIM TO TESTIFY IMPROPERLY AS A LAY WITNESS. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. ART. 1, PARS. 1, 9, 10.
(Not raised below)

POINT IV

THE [TWENTY] FIVE-YEAR AGGREGATE SENTENCE WAS MANIFESTLY EXCESSIVE.

Having reviewed these arguments in light of the applicable deferential standards of appellate review, we affirm defendant's conviction and sentence.

---

[1] We use initials to protect the privacy of the victim.

[2] Before the trial court, defendant argued that his Twitter messages should have been excluded from evidence because they were not authenticated, not because they were other-crime evidence pursuant to N.J.R.E. 404(b).

A-1849-17T2

I.

The State's proofs at trial demonstrated that defendant agreed with co-defendants Kevon Carter and Tayron Brown[3] to rob D.H. at gunpoint. Although he did not participate in the robbery, defendant supplied the handgun that was used in the robbery and was observed in the area of the scene shortly after the crime was committed. Following the robbery, defendant threatened D.H.

The evidence adduced at trial, which is pertinent to this appeal, was aptly summarized by the trial court during sentencing:

> On July 7, 2015, [D.H.], who had previously been convicted of a drug offense, was employed at a gas station. He closed the gas station at 12:30 a.m. and was walking to his apartment when confronted by K[e]von Carter and Tayron Brown, both of whom had previous arrests. [D.H.] knew both of them. Carter and Brown display[ed] a small chrome-plated handgun and demand[ed] money from [D.H.].
>
> They told [D.H.] to return to the gas station and open the safe where the night's receipts were stored. Informed by [D.H.] that the safe could not be opened, they directed [D.H.] to his family's home where they would continue the robbery. Someone in the family home alerted the police. The police arrived and Carter and Brown fled, discarding the gun in their flight.
>
> At the same time, . . . defendant . . . had been in cell phone contact with Carter and Brown and was

---

[3] Carter and Brown pled guilty prior to defendant's trial and are not parties to this appeal.

A-1849-17T2

parked in a car only a block away from the [victim's] family home. The police found Carter hiding in a pile of trash in possession of a cell phone. The gun was recovered the next morning during a daylight search. The cell phone revealed that Carter had been in touch with [defendant] throughout the night.

Initially [D.H.] was uncooperative and refused to implicate Brown, who had escaped. But his reluctance began to wane when he was accosted one night in Dempster's Bar by someone who knew he would be a potential witness against Carter, who was . . . defendant's cousin. Thereafter, [D.H.] received repetitive intimidating threats from . . . defendant who sought to discourage his testimony in the case against Carter.

Defendant sent [D.H.] a message, . . . ["]you popped my cousin at Dempster's,["] . . . . A clear indication that the assault on [D.H.] at Dempster's was related to potential testimony against Carter.

Because of defendant's threats, [D.H.] became more cooperative to law enforcement and said that he believed . . . defendant was involved in the robbery. Nonetheless, the threats were so persuasive that [D.H.] sought to recant at time of trial.

A detective searching the Internet discovered a video in which Carter and . . . defendant are seen displaying a small chrome, silver handgun while appearing to be ingesting marijuana and flashing gang signs [(Twitter video)]. The threats to [D.H.] were real and were designed to subvert the judicial process. Defendant frequently drove past [D.H.]'s residence making hand gestures and calling [D.H.] a rat. In other social media messages [Twitter messages] he wrote,

5

[]Ima fuck ya dad up when I see em.[]
[]I want my fade bra WYA.[]
[]You lucky ya snitch ass was in front of
the courthouse Ima kill you.[]

On another occasion, defendant threatened [D.H.] when the two crossed paths in the courthouse.

## II.

## A.

With this factual backdrop in mind, we consider defendant's first contention that the trial court erred in admitting the Twitter video, which was posted on Carter's Twitter account page less than two months before the present crime was committed. Defendant claims the Twitter video should have been excluded as other-crimes evidence pursuant to N.J.R.E. 404(b) because the handgun depicted in that video was not intrinsic evidence of the robbery. He further contends "[t]he video was inflammatory evidence of bad acts that had no probative value as evidence of [his] participation in the robbery . . . ." We disagree.

"The threshold determination under Rule 404(b) is whether the evidence relates to 'other crimes,' and thus is subject to continued analysis under Rule 404(b), or whether it is evidence intrinsic to the charged crime, and thus need only satisfy the evidence rules relating to relevancy, most importantly Rule

403." State v. Rose, 206 N.J. 141, 179 (2011).  An uncharged offense is intrinsic evidence if:  (1) "it 'directly proves' the charged offense[,]" or (2) the uncharged act was "'performed contemporaneously with the charged crime'" and it "'facilitate[d] the commission of the charged crime.'"  Id. at 180 (citation omitted).

Pursuant to N.J.R.E. 404(b), evidence of other crimes or bad acts is generally not admissible, unless used for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute."  In State v. Cofield, 127 N.J. 328 (1992), our Supreme Court set forth a four-pronged test (Cofield test) that governs the admission of such evidence:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [Id. at 338 (citation omitted); see also State v. Carlucci, 217 N.J. 129, 140-41 (2014) (reaffirming the Cofield test).]

A-1849-17T2

We apply an abuse of discretion standard to the evidentiary rulings of other-crime evidence. State v. Castagna, 400 N.J. Super. 164, 182 (App. Div. 2008). Under that standard, we defer to the trial court "in recognition that the admissibility of extrinsic evidence of other crimes or wrongs is best determined by the trial judge[,] . . . who is therefore in the best position to weigh the [evidence's] probative value versus potential prejudice . . . ." Id. at 182-83. There must be a "clear error of judgment" to overturn the trial court's determination. Rose, 206 N.J. at 158 (citation omitted). However, if the trial court fails to engage in a proper N.J.R.E. 404(b) analysis, our review is plenary. Ibid.

Here, when the State moved to introduce the Twitter video at trial, the trial court conducted an N.J.R.E. 104 hearing, viewed the video, and determined it was "relevant and necessary" for the jury's consideration.[4] The handgun displayed in defendant's hands in the video was intrinsic evidence of the armed robbery, and "probative of . . . defendant's ability, intent or opportunity to commit a robbery." We agree.

---

[4] Apparently, the court admitted the video with the sound redacted because the background rap lyrics could be considered offensive by the jury.

Relevant here, use of a firearm during a robbery elevates the grading of the offense from second to first degree. N.J.S.A. 2C:15-1(b). Further, the video depicts defendant with Carter, thereby dispelling defendant's statement to police that he did not know Carter. Thus, the Twitter video contains evidence that "is clearly relevant to material facts at issue in the determination of defendant's guilt on the charged offenses." State v. Brockington, 439 N.J. Super. 311, 333 (App. Div. 2015).

Viewed in that context, the Twitter video was properly admitted as intrinsic evidence of the armed robbery. Because we find the Twitter video depicted intrinsic evidence, we need not consider its admissibility under N.J.R.E. 404(b), although we nonetheless do so for the sake of completeness.

With respect to defendant's N.J.R.E. 404(b) argument, we recognize the court did not expressly address the four Cofield factors. Notwithstanding, based on our independent review of the record, the evidence is also admissible under the traditional analysis set forth in Cofield, 127 N.J. at 338, especially where, as here, defendant primarily challenges the fourth Cofield factor.

As for the first factor, the evidence was relevant to a material issue, i.e., use of the weapon during commission of the robbery and defendant's knowledge of Carter. The second factor applied because the handgun depicted in the video

was strikingly similar to that used in the robbery. Those similarities were described by the lead detective at trial as: "the shape, what appeared to be the same logo on the side [of the weapon, i.e.], Raven Arms logo, the wooden handle, [and] the chrome slide[.]" The third factor was met because, as the court remarked, "it was shocking . . . just how clear that gun was."

Lastly, the probative value was not outweighed by its apparent prejudice. The court recognized the evidence was "harmful to . . . defendant's case[,]" but reasonably concluded its prejudice was outweighed by its probative effect. We concur and reject defendant's argument that the court should have admitted screenshots of the video as a less prejudicial means of establishing the same point. The screenshots are not adequate substitutes for the entire video because, as the State demonstrated, the screenshots "do not depict a portion of the video where the entire gun can be seen in frame, including the Raven Arms logo on the side." See State v. Stevens, 115 N.J. 289, 303 (1989) ("In weighing the probative worth of other-crime evidence, a court should consider not only its relevance but whether its proffered use in the case can adequately be served by other evidence.").

Moreover, the trial court properly instructed the jury on the limited use of other-crime evidence here. Cofield, 127 N.J. at 340-41. Specifically, the court

used the model jury charge for N.J.R.E. 404(b) evidence, as tailored to the facts of this case. Thus, the jury was instructed they could not use the Twitter video as propensity evidence. Rather, the court informed the jury that the video recording was admitted "only to help [them] decide whether . . . defendant supplied the gun in the alleged robbery and whether he conspired to commit robbery." The court then instructed the jury that they "may consider the video for no other purpose." We assume the jury followed the court's instructions. State v. Martini, 187 N.J. 469, 477 (2006).

## B.

We next consider defendant's newly-minted argument that the court should have precluded his Twitter messages pursuant to N.J.R.E. 404(b) through the plain error lens. R. 2:10-2. For the first time on appeal, defendant claims the Twitter messages received by D.H. during his interview with police relate to an incident with defendant's cousin, and not to the armed robbery of D.H. In essence, defendant contends D.H. struck his cousin at Dempster's Bar, and the Twitter messages are in response to D.H.'s alleged assault of defendant's cousin.

Defendant's arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We add only the following brief remarks.

11

In ruling that the Twitter messages did not "violate[] any of the authentication rules including [N.J.R.E.] 901, [and N.J.R.E.] 902," the court properly observed the messages were sent in close temporal proximity to D.H.'s interview with police.  Moreover, the court correctly concluded the Twitter messages were intrinsic to the witness tampering charges.  There is sufficient credible evidence in the record to support that determination.  Conversely, the record is devoid of any evidence that the Twitter messages related to D.H.'s purported assault of defendant's cousin.

C.

Turning to defendant's next argument, also raised for the first time on appeal, we consider whether the court erroneously permitted the lead detective to interpret certain slang phrases and social media acronyms contained in defendant's Twitter messages.  Although defendant did not object to that testimony during trial, on appeal he argues it was inadmissible lay opinion testimony.  See N.J.R.E. 701.  We conclude there was no error, let alone plain error.

The opinions of non-expert witnesses are admissible if they are "(a) . . . rationally based on the perception of the witness and (b) will assist [the jury] in understanding the witness' testimony or in determining a fact in issue."  Ibid.

12

The detective testified he was familiar with slang terms, including "strap," and "WYA." He then explained that, "Strap is a street term for a gun[]"; and "WYA" meant "Where you at[?]"

The detective's knowledge regarding those terms was based on his experience as a police officer and his personal knowledge. Specifically, the detective testified he was familiar with street slang as a result of his employment. Further, he was familiar with social media slang because he consulted social media platforms as part of his employment and in his personal life. Thus, the detective's testimony satisfied the criteria of N.J.R.E. 701, and we find no abuse of discretion in the trial court's decision to admit the testimony.

Indeed, we previously have held that a knowledgeable police officer can give testimony about street or gang terminology. State v. Johnson, 309 N.J. Super. 237, 263 (App. Div. 1998) (recognizing the lay opinion of a police officer regarding street slang was admissible because it assisted the jury in determining the meaning and context of the defendant's conversation); cf. State v. Hyman, 451 N.J. Super. 429, 448-49 (App. Div. 2017), certif. denied, 232 N.J. 301 (2018) (requiring expert testimony where the detective's knowledge of code words was based on his investigation of the matter at hand, and not based on his personal knowledge).

A-1849-17T2

Furthermore, we find no plain error in the admission of the detective's testimony. That testimony was not of the nature to have been "clearly capable of producing an unjust result." See R. 2:10-2; see also State v. Singleton, 211 N.J. 157, 182 (2012).

III.

Defendant's final argument asserting the court imposed an excessive and unfair sentence upon him requires little comment. He contends the court failed to find mitigating factor seven, N.J.S.A. 2C:44-1(b)(7) (lack of prior record), and that the court provided insufficient reasons for imposing a sentence greater than the minimum ten-year term for witness tampering.

Sentencing determinations are reviewed on appeal with a highly deferential standard. State v. Fuentes, 217 N.J. 57, 70 (2014).

> The appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) 'the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.'
>
> [Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

14

Once the trial court has balanced the aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b), it "may impose a term within the permissible range for the offense." State v. Bieniek, 200 N.J. 601, 608 (2010); see also State v. Case, 220 N.J. 49, 65 (2014) (instructing that appellate courts may not substitute their judgment for that of the sentencing court, provided that the "aggravating and mitigating factors are identified [and] supported by competent, credible evidence in the record").

In its sentencing analysis, the court found aggravating factor three, N.J.S.A. 2C:44-1(a)(3) (risk of committing another offense), and nine, N.J.S.A. 2C:44-1(a)(9) (the need for deterrence). The court found mitigating factor eleven, N.J.S.A. 2C:44-1(b)(11) (imprisonment would cause hardship on defendant's family). In addition, the judgment of conviction reflects that the court consented to "a reduction of the primary parole eligibility date pursuant to N.J.S.A. 30:4-123.67."[5]

---

[5] That statute permits inmates to enter into agreements with the Department of Corrections that provide for "individual programs of education, training, or other activity which shall result in a specified reduction of . . . the inmate's primary parole eligibility date . . . upon such successful completion of the program." N.J.S.A. 30:4-123.67(a).

We are satisfied the trial court appropriately applied those sentencing factors, and provided sufficient explanation for the facts supporting each factor. The court also explained that it considered the other mitigating factors,[6] including those argued for by defense counsel, but did not believe those mitigating factors were applicable here.

We simply note that we reject defendant's contention that mitigating factor seven, N.J.S.A. 2C:44-1(b)(7) (lack of "prior delinquency or criminal activity") applies here. Although defendant was twenty-two when he was sentenced, the present offense was not his first arrest, and he was adjudicated delinquent on a theft offense shortly after his seventeenth birthday. N.J.S.A. 2C:20-3; see also State v. Torres, 313 N.J. Super. 129, 162 (App. Div. 1998) (rejecting mitigating factor seven where defendant had two prior juvenile arrests and no convictions).

We also reject defendant's argument that the court improperly sentenced defendant at the middle of the sentencing range on the witness tampering conviction because that sentence was required to run consecutively to the armed robbery conviction. Defendant cites no authority for that contention. Moreover,

_____

[6] The court stated it found "aggravating factors one and seven through ten do not apply." (emphasis added). Based on our review of the record, we believe the court misstated, and meant "mitigating factors." Specifically, defendant argued that mitigating factors one, seven through ten, and nine applied while the State argued aggravating factors three, five and nine applied.

we find no error in the imposition of the armed robbery sentence at the lowest end of the first-degree range, while the witness tampering sentence was imposed at the middle of the same range. The court astutely recognized that the armed robbery conviction was subject to NERA, whereas the witness tampering conviction was not. See Case, 220 N.J. at 64-65 ("[W]hen the aggravating factors preponderate, sentences will tend toward the higher end of the range.").

In sum, the trial court properly identified and weighed the applicable aggravating and mitigating factors. We perceive no abuse of discretion in the sentence imposed, which does not shock our judicial conscience. Roth, 95 N.J. at 365.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1849-17T2