**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4665-17

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

LEONARD K. COLEMAN,

     Defendant-Appellant.

_____

Argued October 21, 2020 – Decided February 16, 2021

Before Judges Fuentes, Whipple, and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 17-04-0500.

George A. LoBiondo, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; George A. LoBiondo, on the briefs).

Nancy A. Hulett, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; Nancy A. Hulett, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Leonard K. Coleman of unlawful possession of a weapon and receiving stolen property for possessing a loaded handgun in a stolen car. On appeal, defendant challenges the trial judge's decision, admitting certain evidence under N.J.R.E. 404(b) that the judge thereafter excluded from the jury's consideration. For the first time on appeal, defendant claims other trial errors warrant reversal of his convictions. We affirm.

I.

Around 4:20 a.m. on January 12, 2015, two officers of the New Brunswick Police Department (NBPD) approached a Dodge Neon parked in a residential driveway on Lawrence Street following a report that the car had been stolen. J.S. (John)[1] was seated behind the steering wheel; defendant was seated next to him. The plastic encasing the car's steering wheel column was damaged, and the ignition had been "punched out," enabling the car to start without a key. John tried to run but was apprehended before he could flee; defendant was removed from the car and arrested.

---

[1] We use initials to protect the identity of the juvenile defendant, R. 1:38-3(c)(9), and a pseudonym for ease of reference.

Officers recovered a flathead screwdriver in defendant's pocket during a search incident to his arrest, and a .380 caliber handgun on the floor behind the driver's seat. Four bullets were loaded in the gun's magazine and one bullet was loaded in its chamber.

John testified at trial pursuant to a cooperating agreement with the prosecution.[2] He told the jury defendant picked him up in the Dodge Neon and they drove to New Brunswick to "see some girls." Upon arriving in New Brunswick, defendant pulled into a driveway to use his cellphone and asked John whether he wanted to drive the car. John stated he "hopped in the driver seat" and "was about to start the car" but "noticed that the car was punched," and defendant "had the screwdriver." About that time, a police vehicle passed by. Defendant and John "ducked down," and defendant told John "a gun was in the car." John saw "the silver part of the gun" in defendant's "lap area."

---

[2] John was charged in a juvenile complaint with acts of delinquency that if committed by an adult would constitute unlawful possession of a weapon and receiving stolen property. John testified at trial that he pled guilty as charged in the Family Part, and the judge imposed a two-year suspended sentence, a thirty-eight-month probationary term conditioned upon completion of a drug program, an additional two years of regular probation, and twelve months of juvenile intensive supervision (JISP). John's charging document, cooperating plea agreement, and adjudication order were not provided on appeal.

While at the scene, defendant told the officers: "You already caught me. It is what it is. Caught in plain sight. Like you said." Defendant's admissions were captured on the dashboard camera installed on the officers' vehicle (MVR video).

At the time of his arrest, defendant was wearing several layers of clothing. During processing at the station, defendant complied with an officer's request to remove his shoes and outer-layer pants, but refused to remove the sweatpants he was wearing underneath those pants, even after a sergeant told defendant the stationhouse policy limited detainees to one layer of clothing. When an officer attempted to place him in handcuffs, defendant brought his arms behind his back and pressed himself against a corner partition of the booking area. In response, an officer grabbed defendant by his hair and "pulled him to the floor." Following "a brief struggle," officers handcuffed defendant. Four officers forcibly removed defendant's sweatpants, searched the gym shorts he was wearing underneath his sweatpants, and recovered various counterfeit bills from the pocket in his gym shorts. The station's surveillance camera recorded the booking area incident (booking video).

During the multi-day jury trial, in addition to John's testimony, the State presented the testimony of the owner of the Dodge Neon, and several law

enforcement officers, including a firearms expert. The State also introduced in evidence the handgun and ammunition; screwdriver; counterfeit currency; booking video, capturing the seizure of counterfeit currency; and MVR video, containing defendant's admissions.[3]

Pertinent to this appeal, the counterfeit currency and booking video were admitted in evidence and displayed to the jury during trial, after the judge denied defendant's motion to bar evidence of the counterfeit currency under N.J.R.E. 404(b). For the reasons that follow, the counterfeit currency and booking video were removed from the jury's consideration at the close of all evidence.

After the State rested, defendant moved to dismiss the Middlesex County indictment that charged him with second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5 (count one); third-degree receiving stolen property, N.J.S.A. 2C:20-7(a) (count two); and fourth-degree obstructing the administration of justice, N.J.S.A. 2C:29-1(a) (count three). The judge denied defendant's motion as to counts one and two, but reserved decision on count three until the close of all evidence.

---

[3] The trial judge denied defendant's pretrial motion to suppress his statements, finding defendant voluntarily uttered the statements, but granted defendant's motion to redact his sarcastic and vulgar remarks from the MVR video. Defendant does not challenge the judge's decision on appeal.

Because defendant did not testify or present any evidence, the judge rendered his decision shortly thereafter, declining to dismiss the obstruction charge but instead downgrading it to a disorderly persons offense for the court's consideration after the jury's verdict on the remaining counts. During the final charge that followed, the judge instructed the jury to disregard "any evidence" regarding the obstruction charge.

The jury convicted defendant on counts one and two. After the jury was discharged, the judge considered the evidence adduced at trial and found defendant guilty of the downgraded obstruction charge, and possession of burglar tools, N.J.S.A. 2C:5-5(a), a disorderly persons offense that was charged by complaint-summons. Thereafter, the judge imposed an aggregate prison sentence of five years, with forty-two months of parole ineligibility pursuant to the Graves Act, N.J.S.A. 2C: 43-6.2. This appeal followed.

On appeal, defendant raises the following overlapping points for our consideration:

<u>POINT I</u>

THE TRIAL COURT ERRED IN ALLOWING THE STATE TO INTRODUCE IRRELEVANT AND HIGHLY PREJUDICIAL "OTHER CRIMES" EVIDENCE REGARDING ALLEGEDLY COUNTERFEIT BILLS.

6

A.  Legal Standard.

B.  The Trial Court Erred in Applying the <u>Cofield</u>[4] Test.

C.  The Trial Court's Error Was Not Harmless.

## POINT II

THE TRIAL COURT ERRED IN ALLOWING THE STATE TO INTRODUCE IRRELEVANT AND HIGHLY PREJUDICIAL "OTHER CRIMES" EVIDENCE RELATING TO THE BOOKING VIDEO.
(Not raised below)

A.  The Obstruction Count Was Legally Deficient.

B.  The Evidence Fails the <u>Cofield</u> Test, Which the Trial Court Failed to Administer.

## POINT III

THE TRIAL COURT'S INSTRUCTIONS TO THE JURY WERE MATERIALLY FLAWED AND INCOMPLETE.
(Not raised below)

A.  Regarding the Counterfeit Bill Evidence, the Trial Court Failed to Give the "Essential" Propensity Instruction.

B.  Regarding the Booking Evidence, the Trial Court Failed to Identify the Evidence [the Jury] Was Supposed to Disregard.

---

4  <u>State v. Cofield</u>, 127 N.J. 328 (1992).

A-4665-17

<u>POINT IV</u>

THE CUMULATIVE EFFECT OF THESE ERRORS
DEPRIVED [DEFENDANT] OF A FAIR TRIAL.
(Not raised below)

A. The Legal Standard.

B. The Cumulative Error Prejudiced [Defendant].

C. The Cumulative Error Was Not Harmless.

II.

The crux of defendant's arguments on appeal is that the judge's initial admission of evidence pertaining to the fourth-degree obstruction charge unduly influenced the jury to convict defendant of the remaining charges on the basis of propensity evidence – even though the obstruction charge ultimately was downgraded and the judge instructed the jury not to consider any evidence pertaining to that charge. For the first time on appeal, defendant asserts the obstruction charge as indicted "was legally deficient from the outset." Defendant also belatedly challenges the judge's limiting instruction when the counterfeit currency was published to the jury and the adequacy of the judge's final charge regarding the obstruction charge.

8

Notwithstanding the judge's ultimate downgrading of the obstruction charge, defendant maintains the judge erred in denying defendant's pretrial motion to bar evidence of the counterfeit currency under N.J.R.E. 404(b). Defendant urges us to conduct a de novo review of the judge's findings under State v. Cofield. Defendant did not seek to preclude admission of the booking video on any grounds, but now seemingly suggests the judge sua sponte failed to consider the video as other crime evidence under Rule 404(b).

A.

We begin our review of defendant's interrelated claims with his belated argument that the fourth-degree obstruction charge was legally flawed as indicted. Under N.J.S.A. 2C:29-1(a), a person commits the offense of obstructing administration of law or other governmental function where

> he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of . . . force, violence, or physical interference or obstacle . . . .

Relevant here, obstructing "the detection or investigation of a crime or the prosecution of a person for a crime" elevates the grading of the charge from a disorderly persons offense to a fourth-degree crime. N.J.S.A. 2C:29-1(b). To establish a violation of subsection (b) in this case, the State needed to

A-4665-17

demonstrate defendant purposefully obstructed the detection or investigation of a crime, as opposed to less serious violations of law. See Model Jury Charges (Criminal), "Obstructing Administration of Law or Other Governmental Function (N.J.S.A. 2C:29-1)" (approved Oct. 23, 2000).

Although our state's criminal code does not specifically criminalize possession of counterfeit currency, the federal code proscribes that conduct when the individual possesses the counterfeit bill "knowingly and with intent to defraud." See 18 USCS § 480. Accordingly, we reject defendant's belated challenge to the legal sufficiency of the fourth-degree obstruction charge here, where defendant's actions obstructed the detection of counterfeit currency secreted in his shorts, notwithstanding the State's failure to adduce evidence proving the possession of counterfeit currency or related crime beyond a reasonable doubt at trial. Notably, defendant did not move pretrial to: dismiss the obstruction charge, see State v. W.S.B., 453 N.J. Super. 206, 232 (App. Div. 2018); sever that count from the indictment, R. 3:15-2(b); or demand a bill of particulars, R. 3:7-5.

B.

We turn to defendant's argument that the counterfeit currency should have been precluded under N.J.R.E. 404(b). In a brief oral decision, the judge

10

initially denied the motion, finding the evidence was relevant to defendant's reason for refusing the officers' requests to remove his pants. Defendant immediately moved for reconsideration. The following day before the jury was sworn, the judge reconsidered his decision, amplified his findings under the four-prong test enunciated by the Court in Cofield,[5] and issued a decision from the bench, finding the State satisfied the first, second and fourth factors.

In sum, the trial judge concluded the counterfeit currency was relevant to defendant's motive for refusing to follow the officers' orders to remove his pants; the event occurred "right at the time of [defendant's] arrest"; and the probative value was "essential to the issue of motive," thereby implicitly finding the probative value outweighed the prejudice to defendant. The judge reserved decision as to whether the State proved the currency was counterfeit by clear and convincing evidence pending the testimony of an NBPD officer adduced at the ensuing N.J.R.E. 104 hearing. The judge thereafter determined the State

---

[5] The Court in Cofield held evidence of other crimes or wrongs is admissible if it is: (1) "relevant to a material issue"; (2) "similar in kind and reasonably close in time to the offense charged"; and (3) established by "clear and convincing" evidence. 127 N.J. at 339. Under the fourth prong, "the probative value of the evidence must not be outweighed by its apparent prejudice." Ibid. The Court has also explained that the similarity requirement under the second prong "need not receive universal application in Rule 404(b) disputes." State v. Williams, 190 N.J. 114, 131 (2007).

satisfied the third <u>Cofield</u> prong. Among other things, the judge cited the officer's testimony that the bills "did not feel like currency" and two bills had "the same serial number."

Ordinarily, we apply an abuse of discretion standard to the evidentiary rulings of other-crime evidence. <u>State v. Castagna</u>, 400 N.J. Super. 164, 182-83 (App. Div. 2008). Under that standard, we defer to the trial court "in recognition that the admissibility of extrinsic evidence of other crimes or wrongs is best determined by the trial judge with more intimate knowledge of the case who is therefore in the best position to weigh the probative value versus potential prejudice of the proffered evidence." <u>Ibid.</u> There must be a "clear error of judgment" to overturn the trial court's determination. <u>State v. Rose</u>, 206 N.J. 141, 158 (2011) (internal quotation marks omitted). If the trial court fails to engage in a proper N.J.R.E. 404(b) analysis, our review is plenary. <u>Ibid.</u>

Pursuant to our deferential standard of review, we discern no abuse of discretion in the trial judge's findings. We affirm substantially for the reasons stated by the judge in his cogent oral decision. <u>R.</u> 2:11-3(e)(2). We simply note the judge's decision comports with the well-established principle that "[a] wider range of evidence may be admissible to prove motive as long as there is a logical connection between the alleged motive and the other-crimes evidence."

A-4665-17

Castagna, 400 N.J. Super. at 178 (citing State v. Williams, 190 N.J. 114, 125 (2007)).  Here, the evidence presented to the trial judge supported the State's theory that defendant's motive for obstructing the administration of law was to prevent the detection of counterfeit currency.

In our view, however, the counterfeit currency seized from defendant's shorts was "intrinsic evidence" of the crime of obstruction.  An uncharged offense is intrinsic evidence if:  (1) "it directly proves the charged offense[,]" or (2) the uncharged act was "performed contemporaneously with the charged crime" and it "facilitate[d] the commission of the charged crime."  Rose, 206 N.J. at 180 (internal quotation marks omitted).  However, even "intrinsic evidence" is subject to N.J.R.E. 403, which permits exclusion of "relevant evidence . . . if its probative value is substantially outweighed by the risk of . . . undue prejudice."  Id. at 177.

In the present matter, defendant possessed the counterfeit currency "contemporaneously" with his efforts to prevent the officers from completing an official police function, i.e., the booking process.  And defendant's possession of counterfeit currency that he secreted in and under his clothes "facilitated the commission" of the obstruction charge when he hindered police efforts to remove his clothes during the booking process.  Moreover, the counterfeit

currency was "clearly relevant to material facts at issue in the determination of defendant's guilt on the charged offense[.]" State v. Brockington, 439 N.J. Super. 311, 333 (App. Div. 2015). Viewed in that context, the counterfeit currency was not subject to analysis under N.J.R.E. 404(b) because that evidence was intrinsic to the obstruction charge. See Rose, 206 N.J. at 177-79. Having conducted a de novo review of the record, we are satisfied evidence of the counterfeit currency was properly admitted at trial.

C.

Defendant now claims errors in the trial judge's limiting instruction issued to the jurors when the counterfeit currency was published to the jury during trial, and the final charge that the jury should not consider that evidence. In essence, defendant contends those instructions failed to caution the jurors they must not infer defendant's propensity to commit crimes from the counterfeit currency seized from defendant. Defendant also belatedly argues the final instructions regarding the obstruction charge failed to specifically reference the booking video.

During trial, when the counterfeit bills were published to the jury over defendant's renewed objection under N.J.R.E. 404(b), the judge promptly issued the following limiting instruction:

14

I just want to make something clear to you, . . . these bills, which the State is alleging are . . . counterfeit, . . . defendant is not . . . charged with possession of counterfeit dollars.

But rather, this [evidence] is being admitted into evidence for the limited purpose for the State to argue that there was a motive as to why there was the obstruction.

And it's only for that purpose only that you should consider these [three counterfeit bills] that have been marked into evidence.

Defendant posed no objection to the adequacy of the instruction when given.

As a preliminary matter, we conclude a limiting instruction was unnecessary because the counterfeit currency evidence was intrinsic to the obstruction charge when it was moved into evidence by the State and not offered to show defendant's criminal propensity. See Rose, 206 N.J. at 180-81. We recognize, however, that the State did not assert the counterfeit currency was intrinsic to the obstruction charge, and the trial judge did not decide defendant's Rule 404(b) motion on that basis. We therefore briefly consider defendant's contentions, which implicitly suggest the judge failed to provide the full model jury charge on Rule 404(b) evidence. See Model Jury Charges (Criminal), "Proof of Other Crimes, Wrongs, or Acts (N.J.R.E. 404(b))" (rev. Sept. 12, 2016) (instructing that that the jurors "may not use [other crime] evidence to

decide that defendant has a tendency to commit crimes or he . . . is a bad person").

Failure to issue an adequate limiting instruction is reviewed using the plain error standard where the issue was not raised at trial. See State v. Burns, 192 N.J. 312, 341 (2007). Under that standard, "we must disregard any error unless it is 'clearly capable of producing an unjust result.'" State v. Atwater, 400 N.J. Super. 319, 336 (App. Div. 2008) (quoting State v. Daniels, 182 N.J. 80, 95 (2004)). "Reversal of defendant's conviction is required only if there was error 'sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached.'" Ibid. (quoting State v. Macon, 57 N.J. 325, 336 (1971)).

Because defendant did not object to the adequacy of the instructions given, we view his newly-minted contentions through the prism of the plain error standard. R. 2:10-2; see also R. 1:7-5; State v. Morais, 359 N.J. Super. 123, 134 (App. Div. 2003) (holding a "[d]efendant is required to challenge instructions at the time of trial."). "Under the plain error standard, [a] defendant has the burden of proving that the error was clear and obvious and that it affected his substantial rights." State v. Koskovich, 168 N.J. 448, 529 (2001) (internal quotation marks omitted).

That burden was not met here, where the judge expressly informed the jury the counterfeit currency only was admitted for "the limited purpose for the State to argue that there was a motive as to why there was the obstruction." Further, the judge expressly instructed the jury to disregard the evidence pertaining to the obstruction charge in its entirety after downgrading it to a disorderly persons offense at the close of all evidence. Specifically, in his final charge, with the consent of defense counsel, the judge issued the following pointed instructions:

> You heard some discussion early on in this case regarding an obstruction charge. As to the obstruction charge, that matter will not be for your consideration. <u>Any evidence you heard regarding the obstruction charge should not be considered by you in determining the charges of receiving stolen property and unlawful possession of a weapon.</u>
>
> You heard evidence of . . . defendant being in the possession of counterfeit bills. The evidence was given with a limited instruction that it was for the purpose of establishing a motive for the obstruction charge. Since that charge is no longer for you to decide, you should not consider at all the evidence of the counterfeit bills, nor should the discussion of that issue enter into your deliberations at any time.
>
> [(Emphasis added).]

Viewing defendant's belated challenges to the limiting and final charges under our plain error standard, we cannot conclude those charges were so

lacking as to constitute reversible error. We presume the jury followed the instructions given. State v. Smith, 212 N.J. 365, 409 (2012).

D.

Little need be said about defendant's belated assertions concerning the booking video. For the first time on appeal, defendant claims that after the judge downgraded the obstruction charge, "the booking video evidence ceased to be 'intrinsic to the charged crime' and became 'other crime' or 'prior bad act' evidence" of the downgraded obstruction charge. Defendant further asserts the judge sua sponte "failed to subject the booking video to the heightened Rule 404(b)" analysis. Defendant's contentions lack sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(2), beyond the following brief comments.

Because the booking video depicted defendant's actions, which physically interfered with the officers' attempts to perform their official function, the video was intrinsic evidence of obstructing the administration of law, as charged in the indictment. In any event, when the judge downgraded the fourth-degree obstruction charge, he removed the video from the jury's consideration during their deliberations. As noted, the judge's final instruction directed the jurors not to consider any evidence regarding the obstruction charge in their deliberations

18

on the remaining charges. Again, we presume the jury followed that instruction. <u>Smith</u>, 212 N.J. at 409. We therefore discern no error, let alone plain error in the jury's viewing of the video during trial.

E.

Finally, we reject defendant's contention that the cumulative effect of the errors committed during his trial warrants reversal. Defendant has failed to demonstrate any error or pattern of errors, rising to the level, either singly or cumulatively, that denied him a fair trial. "A defendant is entitled to a fair trial but not a perfect one." <u>State v. R.B.</u>, 183 N.J. 308, 334 (2005) (internal quotation marks omitted).

Even assuming arguendo error was committed by the jury's viewing of the counterfeit currency and booking video, that error was not clearly capable of producing an unjust result in view of "the overall strength of the State's case." <u>State v. Sanchez-Medina</u>, 231 N.J. 452, 468 (2018). Indeed, the evidence of defendant's guilt on the unlawful possession of the weapon and receiving stolen property charges was substantial. Defendant was arrested while seated in a stolen car, with a "punched out" ignition and a screwdriver in his pocket. Police recovered a loaded handgun on the floor of the car occupied by defendant and John. <u>See</u> N.J.S.A. 2C:39-2(a) (1) (providing a presumption of joint possession

19

of a firearm found in a vehicle with more than one occupant).  Most telling are defendant's own words, admitting he was "caught in plain sight."  That evidence cumulatively established defendant's guilt on the charges submitted to the jury.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4665-17